COMMONWEALTH *vs.* ABRAHAM I. ASHEROWSKI & another.

Worcester.   October 1, 1907. — October 15, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Accessory.· Burning Property with Intent to injure Insurer.   Practice, Criminal,* Exceptions, Election.

One indicted as accessory before the fact of a person of name unknown, who is alleged to have committed the crime described in R. L. c. 208, § 10, of burning property with intent to injure an insurer thereof, cannot be convicted unless it is proved that the burning was done with the intent alleged, nor can he be convicted even though he had procured the burning to be done, if the person who did it at that time was ignorant of the existence of insurance on the property.

If the bill setting forth an exception taken by a defendant in a criminal proceeding to a refusal by the judge presiding at the trial to instruct the jury to return a verdict of not guilty does not state what instructions were given to the jury, this court will presume, if it decides that it was proper to submit the case to the jury at all, that there were full and accurate instructions upon all the questions raised at the trial.

Where one is indicted as accessory before the fact of a person of name unknown, who is alleged to have committed the crime described in R. L. c. 208, § 10, of burning property with intent to injure an insurer thereof, the facts, necessary to the conviction of the defendant, that such unknown person had knowledge that the property was insured and had an intent to injure the insurer by means of the fire, may be proved by circumstantial evidence; and there is a case for the jury if there is evidence which would warrant an inference that such facts are true although such inference is not a necessary one, provided it is not forbidden by some special rule of law.

At the trial of an indictment against two, A. and F., who were alleged to have been accessories before the fact of a person of name unknown in the commission of the crime described in R. L. c. 208, § 10, of burning property with intent to injure an insurer thereof, it appeared that a fire of incendiary origin occurred

at about one o'clock in the morning on premises where the defendants were engaged as partners in the manufacture and sale of clothing, that there were but three keys to the building, one in the possession of the defendant F. and the other two in the possession of employees of the defendants who testified that they did not start the fire, and one of whom testified that he was the last to leave the premises the night before the fire and that at that time he locked the door to which he had a key, that when the firemen arrived they found the building securely fastened and the fire in the basement, where there were fire traps, that a large part of the defendants' stock in trade had been brought into the basement, that before the fire the building, stock, furniture and fixtures had been insured much beyond their value and that, after the fire and before their arrest the defendants filed proofs of loss with the insurer for a grossly exaggerated amount. It was admitted that the defendant A. could not have been near the premises at the time of the fire, and there was testimony on behalf of the defendant F. that he was at his home at a card party which lasted from half past seven until a quarter before one o'clock on the night when the fire was set, but there also was testimony that on the morning after the fire he had stated to a member of the State police that he went to bed on the night of the fire at half past ten, and that he had not said anything about a party. *Held*, that there was evidence warranting a finding that some person, procured to do so by the defendants and knowing of the insurance on the property, set the fire with intent to injure the insurer of the property, and that a verdict of guilty against both defendants was warranted.

At the trial of an indictment in four counts against A. and F., the first count alleging that they were joint principals in the commission of a crime, the second that A. was principal and F. was accessory before the fact, the third that F. was principal and A. was accessory before the fact and the fourth that both were accessories before the fact to a principal of name unknown, the Commonwealth, before introducing any evidence, nol prossed the first and second counts. After the close of the evidence, the defendants requested that the Commonwealth be compelled to elect as to which of the remaining counts it would proceed upon, but the presiding judge refused the request. *Held*, that the Commonwealth could not be compelled to elect, and that the request was refused rightly.

INDICTMENT found and returned in the Superior Court for the county of Worcester January 21, 1907, in four counts, the first charging the two defendants, Asherowski and Fielding, with the wilful burning of insured property with intent to defraud an insurer thereof, the second charging Asherowski as principal in such a crime and Fielding as accessory before the fact, the third charging Fielding as principal and Asherowski as accessory before the fact, and the fourth charging both Asherowski and Fielding as accessories before the fact to a principal whose name was unknown to the grand jury.

At the trial, which was before *Brown*, J., after the empanelling of the jury, the district attorney, with the consent of the defendants, nol prossed the first and second counts.

The following facts, besides those stated in the opinion, were in evidence:

The defendants were engaged as partners under the name of Asher and Fielding in the manufacture and sale of clothing and occupied a building at the corner of Spruce and Green Streets in Worcester. The fire occurred at about one o'clock in the morning of November 21, 1906. When the members of the fire department arrived, all the doors and windows of the building were securely fastened, and they had to force an entrance. They found that the fire was in the basement where were fire traps composed of bundles of matches having pink heads wound together with string, surrounded with cloth and small pieces of wood, and all saturated with oil. Around the matches were collected a large amount of the merchandise belonging to the defendants which ordinarily would not have been in the basement. Matches and string like those used in the fire traps were found in the desk in the store.

The defendant Fielding was at the fire. The deputy chief of the fire department, not knowing who he was, ordered him to leave the building as they were going to close it up. Fielding said " Yes, I will get away from this place as quick as I can," but did not state that he was one of the proprietors of the store.

Six witnesses testified that the defendant Fielding was with them at a card party of eleven at his home from about half past seven until about fifteen minutes before one on the night of the fire, and was not absent from the house at any time during that period. There was evidence that the day after the fire Fielding had told a member of the State police that he had gone to bed at half past ten the night of the fire, and that he said nothing of having been at any party.

It was admitted that the defendant Asherowski left Worcester the morning of November 20 for a business trip to Boston and Portland, Maine, and that he returned to Worcester November 22.

There were three keys to the building, one in the possession of Fielding, one in the possession of the bookkeeper, and one in the possession of a foreman. They all testified that they did not set the fire, and the foreman testified that he was the last one to

leave the premises the night before the fire and that he locked the door to which he had the key.

At the close of the evidence, the defendants asked the presiding judge to rule that the Commonwealth must elect upon which of the two remaining counts it would rely. The request was refused and the defendants excepted.

The defendants then requested that verdicts be ordered for them on each of the third and fourth counts. The requests were refused and the defendants excepted.

The jury found both defendants guilty on the fourth count, and not guilty on the third.

The defendants moved for a new trial on the ground that the verdict against them on the fourth count was not warranted by law. The presiding judge overrruled the motion and the defendants excepted.

Other facts are stated in the opinion.

*H. Parker*, (*W. Thayer* with him,) for the defendants.

*G. S. Taft*, District Attorney, (*E. I. Morgan*, Assistant District Attorney with him,) for the Commonwealth.

SHELDON, J. This case went to the jury upon the third and fourth counts, and the jury convicted the defendants only upon the fourth count, which charged the defendants as accessories before the fact to a principal whose name was unknown to the grand jury; and the defendants' exceptions raise the question whether it was competent for the jury to return a verdict of guilty upon this count. The count charges that some person unknown did burn certain cloth and garments which were insured in the Franklin Insurance Company against loss or damage by fire, with intent thereby to injure the said insurers; and that these defendants procured, etc., the said unknown person to commit that felony.

We agree with the defendants that in order to convict them it was necessary to prove that some person had committed the principal felony charged, had, that is to say, burned these goods with the specific intent to injure the insurers thereof. R. L. c. 208, § 10. *Commonwealth* v. *Goldstein*, 114 Mass. 272. *People* v. *Henderson*, 1 Parker, Crim. (N. Y.) 560. *Staaden* v. *People*, 82 Ill. 432. *People* v. *Schwartz*, 32 Cal. 160. *Queen* v. *Bryans*, 12 Up. Can. C. P. 161. The intent to injure the insurer is a

necessary ingredient of the crime described in R. L. c. 208, § 10; and unless the person who did the burning is shown to have acted with that intent, the crime is not proved to have been committed. And these defendants, who are charged in the count before us only as accessories before the fact, could not be convicted unless it was proved that the principal offence was in fact committed in violation of the statute. *Commonwealth* v. *Adams*, 127 Mass. 15, 17, 19. *Commonwealth* v. *Glover*, 111 Mass. 395. *Commonwealth* v. *Phillips*, 16 Mass. 423. Even though the defendants may have procured this fire to be set, yet if the person who set it, though acting by their procurement, was in fact wholly ignorant of the insurance, and had no actual intent to injure the insurer, he acted innocently so far as this charge is concerned, and could not be found to have committed the offence charged in the indictment. These defendants, in that event, very likely may have committed a substantive crime; it may well be that they could themselves be held to be guilty of the offence which they would thus have committed by an innocent hand. *Commonwealth* v. *Hill*, 11 Mass. 136. But they could not be convicted as accessories before the fact to a felony which had not been actually committed.

The complaint now made by the defendants, however, is that the court refused to order their acquittal. None of the instructions actually given are stated in the bill of exceptions; and it must be presumed that full and accurate instructions were given to the jury upon all the questions raised at the trial, if it was proper to submit the case to them at all. Accordingly the only question before us is whether the jury had a right to return a verdict of guilty upon the fourth count of the indictment.

It is earnestly and ably argued by counsel for the defendant that there was absolutely no evidence that the person who set the fire had any knowledge that the property was insured, or had any intent by means of the fire to injure the insurer. Undoubtedly there was no direct evidence of these facts; but if there was circumstantial evidence from which they might have been inferred by the jury, that was sufficient. Even in capital cases, convictions resting either entirely or mainly on circumstantial evidence have been sustained by this court; and it has been left to the jury to determine whether that evidence came up to the

stringent standard contended for by the defendants under the rules laid down in *Commonwealth* v. *Webster*, 5 Cush. 295; *Commonwealth* v. *Tucker*, 189 Mass. 457; *Commonwealth* v. *Best*, 180 Mass. 492, 496; *Commonwealth* v. *Umilian*, 177 Mass. 582; *Commonwealth* v. *Williams*, 171 Mass. 461, 462. This was substantially the ruling given in *Commonwealth* v. *Gilbert*, 165 Mass. 45, 49, in which a conviction resting upon circumstantial evidence was sustained. As was said by Holmes, J., in *Commonwealth* v. *Doherty*, 137 Mass. 245, 247, "When a material fact is not proved by direct testimony, but is left to be inferred from the facts directly sworn to, the inference need not be a necessary one. There is a case for the jury, unless the inference either is forbidden by some special rule of law, or is declared unwarranted because too remote, according to the ordinary course of events. If there is a case for the jury, they are at liberty to use their general knowledge in determining what inferences are established beyond a reasonable doubt; and the facts inferred by them are as properly proved as if directly testified to."

Upon the evidence stated in the bill of exceptions, the jury were fully warranted in finding that the fire set in the defendants' store shortly before one o'clock in the morning was of incendiary origin. The testimony as to the fire traps found in the basement was amply sufficient for this purpose. Indeed we do not understand the defendants to deny this. And in view also of the testimony as to the keys of the store; of the evidence that when the firemen arrived at the building all the doors were locked and all means of entrance to the building closed, and that there was nothing to indicate that a forcible entry had been made; that a large part of the defendant's stock in trade had been brought into the basement where the fire traps were set in such a manner as to make possible an inference that it had been intended to lay the foundation for a magnified claim of loss; that both the building and the stock, furniture and fixtures were insured much beyond their real value; that after the fire and before their arrest the defendants filed proofs of loss with the insurance company for a grossly exaggerated amount; and in view also of the conduct of both the defendants before and after the fire and of one of them while it was burning, it seems manifest to us that the jury had a right to draw the inferences that

the defendants had a guilty connection with the fire; that they must either have set it themselves or procured it to be set by some confederate. It might have been found not only that the defendants had ample opportunity to do this, but that no one else could have done it without their privity. *Commonwealth* v. *Umilian*, 177 Mass. 582, 583. And if the jury accepted, as they had a right to accept, the claim of the defendants that neither one of them was present at the store when the fire was set, the inference might well be drawn that they had procured it to be set by another. Doubtless there was testimony also from which the jury might have drawn inferences more favorable to the defendants; but the only question before us is whether they could find against the defendants, and we cannot consider any question of the weight of the evidence.

And we are of opinion that the jury might also find that the person who set the fire had knowledge of the insurance and acted for the purpose of injuring the insurer. There is a presumption that all men intend the natural and probable consequences of their acts. *Commonwealth* v. *Hersey*, 2 Allen, 173, 179. The jury might have found that whoever set this fire acted by the procurement of the defendants; that he knew that it was set on the premises of the defendants, where they carried on business as dealers in clothing, and for the purpose of destroying their stock and other property; that he made careful preparations, by the construction and location of six fire traps in the basement, for what he expected to be an immediate and furious outburst of fire; and that he brought into the basement, into contiguity with those fire traps, a large quantity of the defendants' stock in trade, so as to lay the foundation for the claim of a large loss of property; that these preparations must have consumed a considerable time, and indicated that the person who made them relied upon the defendants to see that he was not interfered with while making them; and that they were calculated to produce a large loss of property and probably would have so resulted but for the fact that in the construction of the fire traps an excessive quantity of oil had been brought into close juxtaposition with the matches used. It is difficult to account for what the jury might find to have been done by this unknown incendiary by any other explanation than that he was laying the foundation for a large

and perhaps a largely fictitious claim upon insurers of the property; and the jury were warranted in finding that this was the explanation of his conduct, that he knew of the insurance and was doing what he did for the purpose of injuring the insurance company by leading it to pay to the defendants upon an unfounded claim to be made by them a large sum of money in pretended satisfaction for their loss. This was enough. His intent to injure the insurance company was no less real if he expected to compel it to pay money to the defendants than if he expected to receive it himself; nor is there anything at variance with this in *Heard* v. *State*, 81 Ala. 55, relied on by the defendants. Accordingly, we are of opinion that the jury were warranted in finding that the principal felony was committed as charged in the indictment, and that the defendants were accessories before the fact to its commission.

The exceptions to the refusal of the court to require the government to elect on which count it would rely, and to the refusal to rule as matter of law that the verdicts of guilty on the fourth count must be set aside and were not warranted by law, have not been argued; and we treat them as waived. Plainly neither of these exceptions could be sustained.

*Exceptions overruled.*