## COMMONWEALTH *vs.* HARRY KAPLAN.

Suffolk. November 9, December 2, 1920. — March 24, 1921.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Burning with Intent to Defraud Insurer. Witness,* Cross-examination. *Practice, Criminal,* Variance, Conduct of trial.

At the trial of an indictment charging that the defendant, before a burning of his dwelling house by another with intent to defraud certain insurance companies, "did incite, procure, aid, counsel, hire and command" the commission of the crime, it appeared that, eight days after a purchase of the house in question by the defendant and two days before the fire, the defendant's attorney had left policies of insurance thereon, duly assigned by the seller to the defendant and by the defendant made payable to the seller as a third mortgagee, with an insurance agent in order to obtain the assent of the companies thereto, and that on the next day, that preceding the fire, a notice had been sent to the attorney that the companies' assent was refused, the policies being later returned to him. The policies were payable, in case of loss, to first and second mortgagees as their interest might appear. It also appeared that after the fire, which involved a loss of $1,191, the insurance was adjusted for $650, that pay-

ment was made by checks of the companies payable to the order of the defendant and the mortgagees, and that, with the defendant's consent, the money was paid to the mortgagees, to the municipality for taxes and to the defendant's attorney for services. There also was evidence tending to show that the defendant expected some pecuniary benefit to result to him from the fire. The defendant asked that a verdict of not guilty be ordered on the ground that there was no evidence that he intended to defraud the insurers. The request was refused. *Held,* that the request properly was refused.

At the trial above described, there was evidence tending to show that the person alleged to have been the principal in the commission of the crime to which the defendant was accessory received money from the defendant to set the fire; that he engaged and paid a third person to assist him, paid for turpentine for that purpose, and made holes in walls and a ceiling to enable the fire to spread. This alleged principal, who testified for the Commonwealth, testified that he "made the fire." The third person testified that the alleged principal gave him a cigarette with which the fire was started. The defendant moved that a verdict of not guilty be ordered on the ground of variance. The motion was denied. *Held,* that the jury were warranted in finding that the alleged principal was either a joint principal or the sole principal, and that the motion properly was denied.

In the practical administration of justice, especially in a criminal case, the trial judge must be given a broad discretion as to the extent and scope of legitimate cross-examination.

It was within the discretion of the judge at the trial above described, after the defendant had named several parcels of real estate which he had owned and had testified that he owned a certain shop which he previously had forgotten to mention, to permit him to be asked in cross-examination whether he had forgotten to mention the shop because he had a fire there.

At the trial above described, the judge permitted the district attorney to inquire of the defendant in cross-examination as to his acquaintance with certain persons, whom he named, and, upon the district attorney stating as his reason for the inquiry, "I am offering this line of examination to show an atmosphere in this case that this man was surrounded by, to show his state of mind, that he was constantly in the company of the fire-makers and the people who had fires in East Boston, some of whom have been convicted and are now serving terms in prison, and others who are indicted," refused to permit the inquiry to proceed further. The defendant then asked the judge to "strike out" the remarks of the district attorney above quoted, and excepted to a refusal to do so. The defendant did not ask for an instruction to the jury to disregard the remarks. *Held,* that, the remarks of the district attorney not being evidence, no exception lay to the refusal to strike them out, although they were irrelevant and immaterial; and no error was committed.

INDICTMENT, found and returned on September 12, 1916, in six counts, the first count charging Reuben Levine with wilfully and maliciously burning the dwelling house of one Harry Kaplan on Saratoga Street in that part of Boston called East Boston, and the third count charging him with having burned that house with intent thereby to defraud certain insurers thereof. The

second, fourth, fifth and sixth counts were against Kaplan, the second count charging him with being an accessory before the fact of the crime charged in the first count, the fourth with being accessory before the fact of the crime charged in the third count, and the fifth and sixth counts charging him with being accessory before the fact to the intentional burning of his own house by a person unknown to the grand jury, and to the burning of the house by such person with intent to defraud the insurers.

On November 22, 1916, the indictment was placed on file as to Levine. On February 26, 1917, the district attorney entered a *nolle prosequi* as to the fifth and sixth counts of the indictment and on March 2, 1917, during the trial, did likewise as to the second count with the consent of the defendant Kaplan.

Kaplan then was tried only on the fourth count. Material evidence and exceptions saved by him are described in the opinion. He was found guilty on March 3, 1917, and on March 12 was sentenced to the State Prison for not more than four nor less than three years, the sentence being stayed until determination of his exceptions, which were filed on October 22, 1917, and were allowed on May 25, 1920.

*A. Berenson,* for the defendant, submitted a brief.

*A. C. Webber,* special assistant to the District Attorney, for the Commonwealth.

DE COURCY, J. The third count in the indictment averred that Reuben Levine on September 23, 1915, did burn the dwelling house of Harry Kaplan with intent to injure certain named insurance companies. The defendant Kaplan was convicted on the fourth count, which charged that he "before the said felony and burning to defraud insurance company was committed, did incite, procure, aid, counsel, hire and command" Levine to commit the felony charged in the third count. It appeared in evidence that Kaplan bought this property on September 13, 1915, from Pollock and Hecht, for $2,600, paying only about $115 in cash, assuming two mortgages then on the property, and giving to his grantors a third mortgage for the remainder of the purchase price. The insurance on the building amounted to $3,500, and was payable to the two mortgagees, as their interests might appear. The said grantors assigned their interest in the policies to Kaplan; and he in turn made the policies payable to Pollock and Hecht

as third mortgagees. On or about September 21, the attorney then acting for Kaplan sent the policies to the office of the insurance agent in order to obtain the assent of the companies to said assignment. Notice was sent to him on the next day that assent was refused; and later the policies were returned to him.

On the day of the fire, September 23, 1915, Levine, who was a painter, was doing some work for the defendant in the vacant tenement on the second floor of the building. There was evidence from which the jury could find that the defendant, late in the forenoon, offered Levine $100 to set the house on fire; that Levine accepted the money, sent his workman Simon Lurie to buy turpentine, made holes in a closet to create a draft, and otherwise prepared the premises for the fire; that turpentine was spread over the floor and in the closet, and the fire was set by placing a lighted cigarette in a box of matches. The fire broke out about three o'clock in the afternoon, and damaged the property to the amount of $1,191. A compromise adjustment was made by the four insurance companies jointly for $650. The checks were made payable to the order of the defendant and mortgagees; and by his consent, the money was paid to the mortgagees, to the city for taxes on the property, and to his attorney for services.

Although the verdict of guilty was entered on March 3, 1917, the filing of the bill of exceptions in the trial court was delayed until October 22 of that year, and its allowance until May 25, 1920. Many exceptions were taken to the admission of evidence and to the refusal of the trial judge to grant certain requests for rulings. We shall consider only those that have been argued, and in the order appearing on the defendant's brief.

1. By his third and fourth requests the defendant asked the judge to order a verdict of acquittal, on the ground that there was no evidence that he intended to defraud the insurance companies. This contention was based mainly on the alleged fact that he had no binding contract of insurance on the building. He also argued, in this connection, that no intent to injure the insurers was shown on the part of the person who committed the principal felony charged. Although this last point was not expressly raised by the requests, undoubtedly the defendant could not be convicted as accessory before the fact unless it was found that the principal offence was in fact committed

in violation of the statute. *Commonwealth* v. *Asherowski,* 196 Mass. 342.

The statute (R. L. c. 208, § 10) provides that "Whoever, with intent to injure the insurer, burns a building . . . belonging to himself or another, and which . . . [is] at the time insured against loss or damage by fire, shall be punished. . . ." A direct benefit to the defendant is not made a necessary element of the crime. The fact, if it was a fact, that Kaplan had no valid binding contract insuring his equity in the property, might be considered by the jury as bearing on the improbability that he would cause the fire to be set for the purpose of defrauding the insurance companies; and the judge so instructed the jury by giving the defendant's sixth request. There is a presumption that all men intend the natural and probable consequences of their acts, and this is applicable alike to the alleged principal and the accessory on the evidence. It was practically certain that the insurance companies would be injured by the fire. Their refusal to assent to the assignments of the policies to Kaplan did not affect the rights of the first and second mortgagees to collect insurance to the extent of their losses. *Palmer Savings Bank* v. *Ins. Co. of North America,* 166 Mass. 189. Further than that, the jury well might find that when the house was burned on September 23, the defendant and Levine supposed that Kaplan's equity was covered by the insurance, and acted on that belief. According to Levine's testimony Kaplan said, when paying him to set the fire, "I would like to fix up the house in a little better condition." Levine replied, "Well, go ahead; it's no use spending the money to repair the tenement, you might as well fix it up the way you want to." Kaplan then said, "Well, I need the money." It is not suggested where that money could come from, in case of fire, unless from the insurance companies. And apparently Kaplan had some basis for a belief that the policies covered his equity, irrespective of any assent to the assignment, as it appears that in fact the drafts in payment of the damage were made payable to him as one of the payees and bore his indorsement. And the money was applied in reduction of the mortgages and in payment of the taxes on his property. The said requests to order an acquittal were denied rightly. *Commonwealth* v. *Asherowski, supra.*

2. The defendant, by his third request, asked the judge to order

a verdict of not guilty on the ground of variance, contending that on the evidence the fire was set by Lurie and not by Levine, as alleged. There was no error in refusing to give this ruling. On the testimony of Levine himself, he received money from the defendant to set the fire; he engaged and paid Lurie to assist him; he paid for the turpentine, made holes through the walls and broke down the ceiling in the closet, to enable the fire to spread. He gave Lurie the cigarette with which the fire was started, according to Lurie's testimony. Levine said, early in his examination, that he was not at the building after noon, but later he testified that he went back after noon, and made the holes. Indeed, when asked "What did you do with the plaster and the laths after you broke them off?" Levine answered "I made the fire." Then followed the question, "You started the fire with the laths?" To which he answered: "Sure." Lurie also testified that when he was in front of Kaplan's store, on his way to the house with the turpentine, Kaplan "told me to make a good job of it and he would give me a present," and "I promised him I will try my best." In short, there was evidence for the jury that Levine was not only a joint principal with Lurie in making all the immediate preparations for the burning, but that he himself actually set the fire. Presumably the Commonwealth would have included Lurie in the indictment as a principal if the grand jury were informed of the facts as disclosed at the trial. But on this record the defendant was not entitled to an acquittal on the ground of a fatal variance. *Commonwealth* v. *Knapp*, 9 Pick 496. *Commonwealth* v. *Lowrey*, 158 Mass. 18. See R. L. c. 218, § 35 (G. L. c. 277, § 35).

Whether the indictment sufficiently charged the offence of counselling and soliciting another to commit a felony need not be considered, as the defendant was actually tried as an accessory before the fact. See *Commonwealth* v. *Flagg*, 135 Mass. 545.

3. It is contended that the trial judge erred in permitting the district attorney to ask certain questions during his cross-examination of the defendant. In the practical administration of justice, the presiding judge, especially in a criminal case, must be given a broad discretion as to the extent and scope of legitimate cross-examination. From the mere reading of the record, it seems that the question whether Kaplan forgot to mention that

he had a shop at 3 Central Square because he had a fire there, might well have been excluded. But we cannot say that the judge, familiar with the atmosphere of the trial, abused his discretion in admitting it. The other question was whether the defendant knew Levine's brother, Hyman Cohen, Julius Yorks, Morris Finklestein, and others. Standing alone, it is not open to serious criticism, as the judge did not permit the district attorney to proceed when informed of his purpose. The prosecuting attorney, when arguing as to the admissibility of this evidence, said "I am offering this line of examination to show an atmosphere in this case that this man was surrounded by, to show his state of mind, that he was constantly in the company of the fire-makers and the people who had fires in East Boston, some of whom have been convicted and are now serving terms in prison, and others who are indicted." The experienced counsel for the defendant thereupon strongly protested against these statements, as irrelevant and prejudicial. He also asked the judge to "strike out" the remarks; and excepted to the judge's refusal to do so. But they were not in evidence, or any part of the record, and hence could not be stricken out. See *Vahey* v. *Boston Elevated Railway*, 222 Mass. 374. Counsel should have included in his requests one asking that the jury be instructed to disregard these words of the prosecuting attorney. Or at the close of the charge when a colloquy occurred between the judge and counsel, he should have directed the attention of the judge to his failure to instruct the jury on this subject. This he failed to do. While the remarks of the prosecuting attorney seem entirely foreign to the case and the jury might well have been cautioned not to be prejudiced thereby, we cannot say that any error of law has been shown, entitling the defendant to a new trial. See *Commonwealth* v. *Farmer*, 218 Mass. 507; *Commonwealth* v. *Homer*, 235 Mass. 526, 535.

What has been said disposes of all the exceptions that have been argued by the defendant. We may add, however, that an examination of the entire record shows no reversible error.

*Exceptions overruled.*