COMMONWEALTH *vs*. JAMES ALBA.

SAME *vs*. SAME.

SAME *vs*. ALPHONSE ALBA.

SAME *vs*. SAME.

Suffolk.     May 12, 1930. — May 26, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & SANDERSON, JJ.

*Accessory. Burning Property with Intent to injure Insurer. Evidence,*
    Presumptions and burden of proof.

Indictments charged two defendants, respectively, with being accessories
    before the fact to the burning, by one whose true name and description
    were unknown, of a building and chattels therein with intent to
    defraud the insurer thereof. The defendants were brothers. The
    building was of three stories and was owned by the defendants' mother.
    One defendant with his family occupied an apartment on the first
    floor, the mother a corresponding apartment on the second floor, and
    the other defendant with his family a corresponding apartment on the
    third floor. Three rear apartments had been unoccupied for some
    time. The building was insured in the mother's name. One defend-
    ant for the first time insured his furniture about five months before
    the fire; the other reinsured his furniture about the same time after
    a lapse of a year. The fire was undoubtedly of incendiary origin.
    There was evidence that when the firemen arrived no one was in the
    building and they could go into any of the apartments without dif-
    ficulty, the outside front and back doors being either open or unlocked,
    and the doors of each tenement inside the building being open; and
    that no door had been broken in. The preparations for a fire were
    confined to the apartments on the first and second floors and to a stair-
    way between those floors, and the fire was confined to those two floors.
    The evidence of the defendants was that they had left the house with
    their entire families about noon on December 23, a Sunday, to spend
    Christmas with a relative in a neighboring city, and had locked the

doors. The fire occurred at about two o'clock in the morning of the next day. Both defendants made false statements to. police officers respecting the amount of their property. Motions that verdicts of not guilty be ordered were denied and the defendants were found guilty. *Held,* that

(1) The intent to injure the insurer might be established even though the principal to the crime expected to compel the insurer to pay money to others than himself;

(2) The jury by convicting the defendants as accessories must have believed their testimony that neither of them was present at the house when the fires were set, but they had a right to infer from all the testimony and the circumstances that the defendants procured the fires to be set by another;

(3) The intent to injure the insurer might be found even though the property was not over insured;

(4) If the jury found that the defendants· procured a principal to set the fires, the facts and circumstances disclosed by the evidence were sufficient to justify the inference that the principal knew of the insurance and was doing what he did for the purpose of injuring the insurance company by leading it to pay to the defendants upon an unfounded claim to be made by them a large sum of money in satisfaction for their loss;

(5) The evidence of the defendants as to locking the doors, when considered with the evidence of those who responded to the fire alarm that the doors were found unlocked, would justify an inference that the person who set the fire had gained access to the building and apartments with keys of one or both of the defendants;

(6) The defendants' false statements to the officer respecting the amount of their property was evidence of their guilt;

(7) Since a natural and probable consequence of the fire was that the insurance companies would be injured by it, it was proper to invoke the principle that all men intend the natural and probable consequences of their acts;

(8) Even though there was no fire in the apartment of one of the defendants and no materials indicating a preparation therein for a fire, the conduct of both defendants, both before and after the fire, and the circumstances, were such that the jury could infer that they were acting together in the matter and were both guilty of being accessories before the fact as charged in the indictments.

FOUR INDICTMENTS, the two first found and returned on February 8, 1929, and charging the respective defendants with being accessories before the fact to the burning of a building in Revere with intent to injure the insurer thereof, and the two second, found and returned on March 6, 1929, charging a similar offence with respect to the burning of chattels in the building.

The indictments were tried together before *Gray,* J.

Material evidence is stated in the opinion. At the close of the evidence, the defendants moved that verdicts of not guilty be ordered. The motions were denied, the defendants were found guilty and alleged exceptions.

*J. P. Walsh*, for the defendants.

*F. M. J. Sheehan*, Assistant District Attorney, for the Commonwealth.

SANDERSON, J. Each defendant was convicted of being an accessory before the fact to the burning of a building and chattels therein with intent to defraud the insurer. In each indictment the principal was alleged to be "John Doe, whose true name and a more particular description of whom is to the said jurors unknown." The defendants and their mother, who owned the building, had previously been acquitted on indictments charging them as principals with burning the building.

The building, located in Revere, was three stories in height, with two apartments on each floor. The three rear apartments had been unoccupied for a substantial period of time. The lower apartment on the front side was occupied by James Alba and his family, the apartment over this by his mother, and the corresponding apartment on the third floor by Alphonse Alba and his family. The insurance on the building was in the name of its owner. The furniture in the apartment of James Alba was insured by him for the first time on July 30, 1928, and the defendant Alphonse Alba, on August 8, 1928, placed insurance on the furniture in his apartment which had been uninsured for about one year.

Both defendants testified, in substance, that the property insured under their respective policies was worth more than the amount of the insurance, and no evidence was introduced to contradict this testimony. The fire was discovered at about 2 A.M. on December 24, 1928, and when the firemen arrived no one was in the building and they could go into any of the apartments without difficulty, the outside front and back doors being either open or unlocked, and the doors of each tenement inside the building were open. There was evidence that no door had been broken

in. The fire was of undoubted incendiary origin. The evidence tended to prove that it started in the kitchen on the first floor, and that a separate fire was started in the hallway leading to the second floor; that a box in one room contained alcohol with a cotton batting trailer leading from it into the corridor, and that in another room a box contained turpentine. A trailer of the same material was also on the stairway leading from the first to the second floor, and a rug in one of the rooms was saturated with turpentine. The preparations for a fire were confined to the apartments on the first and second floors, and to the stairway leading from one to the other, and the fire was confined to those two floors.

The testimony of the defendants and their witnesses tended to prove that James Alba, having left his two children with a relative in Boston, went on December 23, with his wife and mother to the house of a relative in Medford to spend Christmas in accordance with an invitation previously given, and that on the same day Alphonse Alba went with his family to visit the same relative on a similar invitation. Their testimony tended to prove that each locked the door when he left. The wife of James testified that Alphonse was in the house when she and her husband left, but Alphonse testified that they left about the same time, and as he understood it James left a few minutes later.

There was testimony that the defendant James Alba said to an officer that he did not know how much insurance he had on the furniture nor who the agent was; that he had no money and his mother, who owns the house, "carried him along."

The defendant Alphonse Alba testified that he was worth in cash $30,000; that when the police officer asked him how much money he had he said three or four thousand dollars as he did not know who the police officer was, although he was told that he was being investigated; that when he made the statement as to the amount to the police officer he had $33,000 on deposit; that he solicited no one to set the fire and knew nothing about the alcohol, turpentine

or cotton batting found in the house; and that he left the house Sunday, December 23, at about 11:30.

James Alba testified that he was worth $50,000, but that he told the officer he had no money because he did not know him and did not know it was right to tell him; that he knew of no alcohol or turpentine on the premises; that he never procured anyone to set the fire and had nothing to do with placing the boxes, cotton batting, turpentine or anything of that nature in the house; that he left the house between eleven and quarter past with his wife and mother; that his apartment was locked; and that so far as he knew he had no enemies who would set fire to the property.

The only exception argued is to the refusal of the judge to allow the defendant's motion in each case that the jury be directed to return a verdict of not guilty. It is an essential part of the case of the Commonwealth to prove the allegation that the unknown principal referred to as John Doe burned the building with intent to injure the insurer. The jury may find a crime proved beyond a reasonable doubt even though the inferences from the facts established are not unescapable or necessary; "it is enough if they are not too remote according to the usual course of events, and if all the circumstances including inferences are of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of incendiarism beyond a reasonable doubt." *Commonwealth* v. *Cooper,* 264 Mass. 368, 373. "When a material fact is not proved by direct testimony, but is left to be inferred from the facts directly sworn to, the inference need not be a necessary one. There is a case for the jury, unless the inference either is forbidden by some special rule of law, or is declared unwarranted because too remote, according to the ordinary course of events. If there is a case for the jury, they are at liberty to use their general knowledge in determining what inferences are established beyond a reasonable doubt; and the facts inferred by them are as properly proved as if directly testified to." *Commonwealth* v. *Doherty,* 137 Mass. 245, 247. The intent to injure the insurance company may be established even though the principal expected to com-

pel it to pay money to others than himself. *Commonwealth v. Asherowski,* 196 Mass. 342, 349. "A direct benefit to the defendant is not made a necessary element of the crime." *Commonwealth* v. *Kaplan,* 238 Mass. 250, 254. *Commonwealth* v. *Cali,* 247 Mass. 20. The jury by convicting the defendants as accessories must have believed their testimony that neither of them was present at the house when the fires were set, but they had a right to infer from all the testimony and the circumstances that the defendants procured the fires to be set by another. The intent to injure the insurer may be found even though the property is not over insured. On the question whether the evidence justified a finding that the principal had the intent alleged, the case is controlled in principle by *Commonwealth* v. *Asherowski,* 196 Mass. 342, notwithstanding the differences in the facts of the two cases, and in this case as in that if the jury found that the defendants procured a principal to set the fires the facts and circumstances disclosed by the evidence were sufficient to justify the inference that the principal "knew of the insurance and was doing what he did for the purpose of injuring the insurance company by leading it to pay to the defendants upon an unfounded claim to be made by them a large sum of money in pretended satisfaction for their loss." (page 349). The testimony of the defendants as to locking the doors when considered with the evidence of those who responded to the fire alarm that the doors were found unlocked would justify an inference that the person who set the fire had gained access to the building and apartments with keys of one or both of the defendants. It was not disputed that the defendants intentionally misstated to the officer the facts in regard to their property. The reason for so doing, as stated by them at the trial, may not have been believed by the jury. "If it were found that their testimony was intentionally false in material particulars, it would be evidence of guilt." *Commonwealth* v. *Sokorelis,* 254 Mass. 454, 457. A natural and probable consequence of the fire was that the insurance companies would be injured by it. In cases of this kind the principle

that all men intend such consequences of their own acts may be invoked. *Commonwealth* v. *Kaplan, supra.* Even though there was no fire in the apartment of the defendant Alphonse and no materials indicating a preparation therein for a fire, the conduct of both defendants, both before and after the fire, and the circumstances, were such that the jury could infer that they were acting together in the matter and were both guilty of being accessories before the fact as charged in the indictments.

*Exceptions overruled.*