COMMONWEALTH *vs.* ABBOTT ENGINEERING, INCORPORATED & another.

Suffolk. November 9, 1966. — January 9, 1967.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Larceny. False Pretences. Practice, Criminal,* Isolation of jury, Comment by prosecutor, Disclosure of evidence before grand jury. *Evidence,* Of larceny, Relevancy and materiality, Of intent, Contradiction of witness, Judicial discretion, On cross-examination, Credibility of witness. *Corporation,* Officers and agents. *Accessory and Principal.*

There was no error in the denial of motions to strike from indictments alleging larcenies by the defendants of money of a partnership the further allegations that the "Massachusetts Port Authority . . . had general and special property" in the money and "actual and constructive possession" thereof where there was a basis for uncertainty as to the respective property interests of the partnership and the authority in the money. [571]

At the trial of indictments for larcenies by false pretences, there was no error in the judge's ordering the jury locked up at the request of the prosecutor without giving a reason; suggestions of prejudice by the defendants were at best entirely conjectural. [572]

At the trial of indictments under G. L. c. 266, § 30, against an engineering corporation and its manager for larcenies by false pretences through a

series of invoices, prepared by the president of the corporation on the instructions of the manager, overstating the hours of work done by the corporation for a partnership under a cost-plus contract, there was no error in the admission of testimony by the president that during a substantially overlapping period he prepared, on the instructions of the manager, invoices overstating the hours of work done by the corporation for a public commission with which it had a contract, where the jury were instructed that such testimony was allowed "merely on the matter of showing intent on the part of . . . [the manager] with respect to the matters which are the subject of these particular indictments; not for any other purpose but the matter of intent"; it was without consequence that the evidence did not show larceny by false pretences from the commission.  [572–574]

At the trial of indictments against a corporation and its manager for larcenies by false pretences through invoices overstating the hours of work done by the corporation, there was no reversible error in permitting several employees of the corporation to testify that the names of certain persons placed on its payroll by the manager were unknown to them. [574]

At the trial of indictments for larcenies by false pretences of money of a partnership through invoices overstating the hours of work done for it, testimony of the comptroller of the partnership that checks in payment of such invoices would not have been issued by it if it had known that the hours claimed on the invoices "were not correct" was properly admitted on the issue of reliance.  [574–575]

At the trial of indictments for larcenies against a corporation and its manager, after the judge had queried the prosecutor as to the relevance of certain testimony of the corporation's accountant to which there had been no objection, there was no error in the prosecutor's comment in reply containing a fair statement of the witness's testimony.  [575–576]

No abuse of discretion was shown at a criminal trial in the exclusion of immaterial evidence offered by the defendants to contradict immaterial testimony previously given by a witness without objection.  [576]

At the trial of indictments for larcenies against a corporation and its manager, there was no error in the judge's rulings with respect to use of testimony of the corporation's treasurer and chief bookkeeper before the grand jury to attack her credibility.  [576–579]

Under G. L. c. 277, § 59, convictions in a certain Massachusetts county of an engineering corporation and its manager upon indictments under c. 266, § 30, for larcenies by false pretences of money of a Maryland partnership were warranted by evidence that the money was obtained by false invoices written in Massachusetts and sent to the partnership and paid by it by checks mailed to the corporation and possessed by the defendants in that county, even though there was no reliance on the invoices there.  [579]

At the trial of joint indictments against an engineering corporation and one who was the chairman of its board of directors and managed its financial and contractual affairs and whose wife held all of its stock, for larcenies by false pretences through invoices, prepared by its president

on the instructions of the individual defendant, overstating the hours of work done by it for a partnership with which it had a cost-plus contract, evidence warranted conclusions that actual control of the corporation and its transactions was vested in the individual defendant, that the president was merely carrying out his design, and that the individual defendant directed, authorized, and consented to the larcenies and was guilty as a principal and not as a mere accessory before the fact even if he did not participate directly in the larcenies.   [579–580]

INDICTMENTS found and returned on February 12, 1965.

The cases were tried in the Superior Court before *Paquet,* J.

*Manuel Katz* (*Daniel Klubock* with him) for the defendants.

*Warren K. Kaplan,* Assistant Attorney General (*James B. Krasnoo,* Special Assistant Attorney General, with him), for the Commonwealth.

WHITTEMORE, J.   These are appeals under G. L. c. 278, §§ 33A–33G, and bills of exceptions by the defendants Abbott Engineering, Incorporated (Abbott), and Charles A. Mogavero who were convicted under eleven indictments for larceny.   The indictments, returned on February 12, 1965, alleged that the defendants, through a series of false representations made during 1959 and 1960, fraudulently obtained from Herschel H. Allen and Edward J. Donnelly, co-partners, doing business as the J. E. Greiner Company (Greiner) of Baltimore, Maryland, sums totaling $89,605.03. The indictments alleged also that the "Massachusetts Port Authority . . . had general and special property" in the funds and that it had "actual and constructive possession" of them.

The evidence tended to show that during 1959 and 1960 Mogavero was chairman of the board of directors of Abbott, Ralph S. Carr was its president, and Mogavero's wife, who had never been active in the affairs of the corporation, held all of the stock.   Mogavero managed all the corporation's financial affairs and the procurement of contracts. Abbott entered into a cost-plus contract with Greiner on March 16, 1959, to do certain design work for Greiner in connection with a cost-plus contract of February 12, 1959, between Greiner and the Massachusetts Port Authority.

Carr testified that, at the time of each monthly billing to Greiner, beginning in April, 1959, and continuing through February, 1960, he presented a draft bill to Mogavero accurately reflecting the number of hours worked on the Greiner contract. On each occasion, Mogavero would return the draft bill to him, stating the amount which he required for the month, and directing that the number of hours shown be increased sufficiently to bring the bill up to the required amount. Carr prepared new invoices accordingly. The invoices were mailed each month to Greiner in Baltimore, and were paid by check. The checks were indorsed for deposit to the account of Abbott. There was evidence that on each invoice the charge for work for the period shown was more than the corresponding items on Abbott's books for that period and that the total of the excess was the amount alleged to have been stolen. Greiner submitted each of the eleven invoices to the Massachusetts Port Authority and was in each case reimbursed for the amount of the invoice.

1. *The defendants' motions to strike.*

There was no error in the denial of the defendants' motions to strike from the indictments the reference to the Massachusetts Port Authority. The purpose of G. L. c. 278, § 9, "is to 'avoid the effect of objections as to the allegation of ownership.' *Commonwealth* v. *Norton,* 11 Allen, 110, 111. An averment and a showing that a . . . property interest in the thing stolen is in someone other than the thief and proof that the thief knew that he had no right to the property taken are sufficient." *Commonwealth* v. *Kiernan,* 348 Mass. 29, 50, cert. den. sub nom. *Gordon* v. *Massachusetts,* 380 U. S. 913. The references to the Authority were not surplusage. There was a basis for uncertainty as to the respective property interests of Greiner and the Authority. Hence, even if the reference to the Authority might have suggested that the Commonwealth and its taxpayers were the ultimate losers, the allegation would have been warranted. There is, however, nothing to indicate that the Commonwealth was financially concerned (see St. 1956, c. 465, §§ 8, 9, and 11) and nothing in the allegation to suggest to the jury that it was.

2. *The trial court's order that the jury be locked up.*

The decision to isolate the jury during the trial on the request of the assistant attorney general lay in the discretion of the trial judge. No reason need be shown. *Commonwealth* v. *Demboski,* 283 Mass. 315, 319–320. There was no error. The suggestions of prejudice are at best entirely conjectural.

3. *The testimony that bills under a separate contract were contemporaneously raised.*

The defendants contend that the trial judge erred in admitting Carr's testimony that, in a substantially overlapping period, on instructions of Mogavero, Carr also altered the bills sent to the Metropolitan District Commission (M. D. C.), under a contract with it. Those altered invoices also showed more hours than had actually been worked. The jury were instructed that the evidence was allowed "merely on the matter of showing intent on the part of Mr. Mogavero with respect to the matters which are the subject of these particular indictments; not for any other purpose but the matter of intent." There was no error. The alteration of the M. D. C. invoices to obtain currently more than had currently been earned tended to show a like intent in the billings to Greiner. A criminal intent must be proved under an indictment for obtaining money under false pretences. G. L. c. 266, § 30. *Commonwealth* v. *Louis Constr. Co. Inc.* 343 Mass. 600, 604. *Commonwealth* v. *Iannello,* 344 Mass. 723, 735–736.

Although evidence is barred that shows no more than the commission of other like crimes (see *Commonwealth* v. *Kosior,* 280 Mass. 418, 423; *Commonwealth* v. *Welcome,* 348 Mass. 68, 70–71), "evidence otherwise admissible does not cease to be so because it happens to show the commission of an independent crime." *Commonwealth* v. *Green,* 302 Mass. 547, 552. Evidence of other wrongful conduct may be received under this rule in order to show intent in the acts charged by the indictments. *Commonwealth* v. *Robinson,* 146 Mass. 571, 577–578 ("induced by the same motive"). *Commonwealth* v. *Snell,* 189 Mass. 12, 21.

*Commonwealth* v. *Dow,* 217 Mass. 473, 480. *Commonwealth* v. *Leventhal,* 236 Mass. 516, 521. *Commonwealth* v. *Butynski,* 339 Mass. 151, 152.

In *Commonwealth* v. *Jackson,* 132 Mass. 16, 17–21, relied on by the defendants, the other sales of "sound and kind" horses were earlier in time. In *Commonwealth* v. *Stone,* 321 Mass. 471, 472–474, the other false pretence was ruled to be not reasonably near in time, nor so similar to or connected with the crime charged as to show unity of plot and design. The facts distinguish also *Noor Mohamed* v. *The King,* [1949] A. C. 182 (Privy Council) where the evidence had been admitted to negate a special defence not raised by the defendant. In *State* v. *Gilligan,* 92 Conn. 526, 536, the "evidence had already gone so far toward eliminating accident or mistake as to leave no reasonable doubt, in the absence of rebutting evidence, that the poison, if administered by the accused, must have been knowingly administered."

Carr's other testimony did not make further proof of intent unnecessary. The defendants admitted nothing. Apart from this testimony as to the M. D. C. billings, they had to explain only Carr's testimony of one series of billings under one contract. An explanation that there had been a mistake or a misunderstanding of instructions would lose credibility as the instances to be explained away multiplied.

In the foregoing discussion, we have set aside the question whether the evidence showed another crime. There was evidence that the M. D. C. contract, although in part a cost-plus contract, provided also for a fixed maximum payment. The evidence failed to show that the fixed maximum would not have been exceeded without the payment of the inflated invoices. We, therefore, accept the defendants' contention that the evidence did not show larceny by false pretences from the M. D. C. *Commonwealth* v. *Louis Constr. Co. Inc.* 343 Mass. 600, 604. It did, however, tend to show the general intent that was critical in respect of the Greiner invoices, that is, an intent to obtain from contract debtors more money than would otherwise be paid on the

submission of invoices purporting to show work done to date. That the other acts were not shown to be criminal did not make the evidence of those acts inadmissible.

At no point in the trial was the other related conduct expressly referred to before the jury as criminal. We note, however, that in the charge the judge read from *Commonwealth* v. *Stone,* 321 Mass. 471, 474, an excerpt that expressly refers to "criminal conduct on another occasion." There was no exception to this and the defendants make no point of it in their brief. It does not appear that the defendants had contended at the trial that the raising of the M. D. C. invoices was not criminal. We see no basis for a reversal in this reference in the charge to the *Stone* case.

4. *The testimony that certain "employees" of Abbott were unknown.*

Several witnesses, employees of Abbott, were permitted to testify at the trial that the names of certain persons placed on the Abbott payroll by Mogavero were unknown to them. The jury could have found it likely that, if these persons had been working for the corporation, they would have been known to one or more of the witnesses. This evidence tended to show Mogavero's dominance in the corporation's affairs and suggested his use of it for his own ends. We discern no reversible error. Nothing in the record suggests Federal income tax violation by Mogavero. *Commonwealth* v. *Valcourt,* 333 Mass. 706, 717–718, is inapposite. That this evidence may suggest the possibility that Mogavero's action defrauded the creditors of Abbott did not bar it.

5. *Indirect proof of Greiner's reliance on the false invoices.*

Robert E. Barto, comptroller of Greiner at the time of the trial, on direct examination replied in the negative to the question: "Would these checks have been issued by the Greiner Company if the company knew that the hours claimed on the invoice were not correct?" There was no error. This testimony tended to show that Greiner had relied upon the invoices. So far as the answer reflected the

present practices of the partnership, it tended to show that the established practice was to pay no invoice which was believed to be false. The point scarcely needed proof, there being nothing to suggest that Greiner was conspiring with Mogavero to defraud the Authority. Other testimony tended to show that no independent audit of these invoices was made.

Testimony with regard to an organization's established procedures in respect of paying vouchers will support the jury's inference of reliance, as against the defendants' allegation of insufficient proof. *Commonwealth* v. *Iannello,* 344 Mass. 723, 736–737. See *Commonwealth* v. *Monahan,* 349 Mass. 139, 153; *Commonwealth* v. *Mulrey,* 170 Mass. 103, 106–107. The statement in *Commonwealth* v. *Jacobson,* 260 Mass. 311, 327–328, that "the persons who are authorized to act for the corporation or the Commonwealth in a particular matter may give . . . testimony as to the effect of the representations on their official action" does not imply that the necessary proof may not be supplied in other form. The court there said that to prove reliance "it was not necessary to call each person representing the Commonwealth who acted upon the defendants' claim. The defendants set the machinery in motion, the natural result of which could have been found to be a fraud upon the Commonwealth."

6. *A comment by the prosecutor.*

In response to the judge's query as to the relevance of certain testimony of Abbott's accountant, the prosecutor replied that it tended "to show the financial position of the corporation during 1959. Mr. Carr testified yesterday that Mr. Mogavero said that he needed money and couldn't live with the [sentence incomplete]." We discern no error. The prosecutor fairly summarized Carr's testimony. There had been no objection to the accountant's testimony. Even if the statement by the prosecutor had been inaccurate or foreign to the case it would not have required reversal. *Commonwealth* v. *Kaplan,* 238 Mass. 250, 256. The defendants' contention appears to be that the purpose of the ac-

countant's testimony became clear only in the light of the prosecutor's answer to the judge's question, and that the judge should have taken some action to inform the jury that the evidence already in the case was not available to corroborate Carr's testimony. There was no motion to that effect and no motion to strike the prosecutor's comment. Although there were objections and exceptions to subsequent inquiries of the same kind, they are not specified in the assignments of error. In any case, we see no prejudicial error in the judge's rulings.

7. *The exclusion of evidence offered to impeach Carr's credibility.*

Carr testified without objection on recross-examination that he told no one at Abbott that his reason for leaving his employment as president of Abbott was related to trouble he was having with his mother-in-law. The later offer of the defendants to prove the contrary through another witness was excluded on the ground of immateriality. There was no error. At most the admissibility of evidence to contradict immaterial testimony is in the discretion of the trial judge. *Commonwealth* v. *Analetto,* 326 Mass. 115, 121.

8. *The use of testimony before the grand jury.*

(a) The defendants objected to a question on cross-examination of Abbott's treasurer and chief bookkeeper, Frances Raftes. The judge said that as the witness was an officer of the defendant corporation she was subject to cross-examination, "and it appears that some of these statements she makes now are a little in conflict with what she might have said some place else, so I am going to permit it to test her credibility."

The prosecutor, in earlier questions, had brought out that the witness had testified before the grand jury and that she did not recall having then been asked concerning her "relationship to Mr. Mogavero with respect to the affairs of Abbott Engineering." Asked if a question and answer then shown to her refreshed her recollection, she had answered, "Well, I must have been awfully confused." Upon being instructed by the judge to answer whether the

item refreshed her recollection she had answered, "No, sir."

The defendants rightly point out that, inasmuch as the transcript of the grand jury testimony shown the witness had not been put in evidence, nothing established for the record that any other statements by the witness were in conflict. But the judge could conclude that the prosecutor had reason to believe that there was some conflict. The replies to various questions justified, we think, a decision to allow a wide range of cross-examination to test credibility. Later, in the testimony of this witness, conflict with her grand jury testimony was plainly shown.[1] In the circumstances we discern no prejudice and no ground for reversal.

We see no basis for inferring that the prosecutor, at this time or later (see [b] and [c] below), intentionally withheld from the jury the contents of the transcript or that he sought to make or made unwarranted suggestions to the jury. Compare *Berger* v. *United States,* 295 U. S. 78, 84–85.

(b) The Commonwealth sought to attack the credibility of Raftes by asking whether on August 18, 1965, contrary to her present testimony, she had testified before the grand jury that she did not know how Carr made up the billings. The witness, having on the judge's instruction been shown the testimony, and having testified that it did not refresh her recollection, answered, "I don't remember." The defendants objected and excepted to the question. The judge then instructed the jury, "I will explain the reason for my ruling on that question. Even though these indictments were returned prior to August, 1965, any time a witness makes a statement that is inconsistent or in conflict with what the witness testifies to on the stand, then evidence of

---

[1] The witness had testified that the general ledger was always kept in Carr's office. She was then shown "this trancript" and asked if she had testified on February 3, 1964, that the general ledger was always kept in her office in a cabinet behind her desk. She answered: "I may have, yes." An exception to requiring an answer without permitting the witness to see in the transcript the context of the inquiry has not been argued.

that may be offered to contradict the statement of the witness on the stand.'' The defendants then excepted ''to Your Honor's rulings.''

The defendants were not prejudiced by the question and answer. The absence of recollection as to prior testimony was not in itself significant. The defendants point out that after the judge's ruling the Commonwealth did not complete for the record the demonstration of an inconsistent statement by offering the August 18 transcript. The likely explanation was oversight, inasmuch as the question and the answer had been read and had been shown the witness. The instruction was appropriate, assuming the contradiction. If the defendants relied on the failure of the Commonwealth to complete the proof (reasonably anticipated in the judge's instructions), they should have moved to strike. We see no prejudicial error.

(c) The witness, having testified that Carr was among those present at a conference, was shown a question and answer in the grand jury transcript. She testified, after being refused permission to read the ''whole thing,'' that what she was shown did not refresh her recollection. She was then asked whether on November 30, 1964, before the grand jury she answered that she did not think Carr was at that conference. Her answer was, ''I don't remember that.'' The defendants' counsel at that point objected and took an exception. No error is shown. See (b), *supra*.

(d) At the close of the evidence, the defendants' counsel, having been permitted to see the questions and answers in the grand jury transcripts that were shown the witness, excepted to the denial of his request for further inspection. He sought to ascertain whether ''there may have been preliminary questions and answers . . . and subsequent questions and answers.'' He said ''just to look at the one question and answer doesn't give me an opportunity to cross-examine this witness.''

The defendants, of course, had no right to a general inspection of the grand jury transcript. *Commonwealth* v. *Giacomazza*, 311 Mass. 456, 462. To be allowed to inspect

the minutes of the grand jury a defendant must "show that 'a particularized need' exists for the minutes which outweighs the policy of secrecy." *Pittsburgh Plate Glass Co. v. United States,* 360 U. S. 395, 400. *Commonwealth v. Ladetto,* 349 Mass 237, 245. We think that the possibility that counsel might on inspection find something related to the questions and answers shown the witness was not such a showing of need as to control the judge's discretion. There was no suggestion from the witness that she had in the course of her grand jury testimony qualified or changed her answers. It might have been appropriate to request the judge to examine the context and to ascertain if there was anything relevant therein and, if so, to permit counsel to see it. We discern no error in the ruling as made.

9. *The defendants' motions for a directed verdict and for a new trial.*

The defendants contend that a directed verdict should have been granted because no evidence was presented that the property stolen was possessed in Massachusetts or in Suffolk County by the defendants. We disagree.

General Laws c. 277, § 59, provides, "The crime of obtaining money or a personal chattel by false pretence . . . may be alleged to have been committed, and may be prosecuted and punished, in any county where the false pretence was made, written or used, or in or through which any of the property obtained was carried, sent, transported or received by the defendant." There is ample evidence to support a finding that the checks from Greiner which represent the subject of the larceny were mailed to Abbott and were possessed in Suffolk County within this Commonwealth. The false pretences contained in the Abbott invoices were, moreover, written in Massachusetts. *Commonwealth v. Kiernan,* 348 Mass. 29, 54–55. Nothing in the statute requires that the representations be relied upon at the place where venue is laid.

Mogavero also contends that the court should have directed a verdict of not guilty for him because the evidence showed him to be, at worst, an accessory before the fact.

This disregards the evidence. The jury could find that Mogavero's relation to the crime was not limited to advising, aiding, and abetting. See *Commonwealth* v. *Mannos,* 311 Mass. 94, 109. The evidence lent support to the conclusion that actual control of the corporation and its transaction was vested in Mogavero by virtue of his position as chairman of the board of directors and by reason of his wife's ownership of all the Abbott stock, and that Carr, as nominal president of Abbott, was merely carrying out the design of Mogavero. The jury on the evidence could find that Mogavero had named Carr president because of a belief that a statute made it necessary or advisable that the president be a registered professional engineer, and that Carr's concern was with engineering or technical matters only and not with the financial management of Abbott's affairs. Where a principal is in full control and participates in an agent's act by close direction and assent, principal criminal responsibility attaches to him. *Commonwealth* v. *Welansky,* 316 Mass. 383, 402. See *Commonwealth* v. *Nichols,* 10 Met. 259; *Commonwealth* v. *Riley,* 210 Mass. 387, 395–396. Mogavero was more than a mere coconspirator not participating in the substantive offence. See *Commonwealth* v. *Kiernan,* 348 Mass. 29, 49. Compare *Commonwealth* v. *Stasiun,* 349 Mass. 38, 49.

For the reasons just stated the court did not err in instructing the jurors that they could find Mogavero guilty even if they found that he did not participate directly in the larceny, so long as they found he directed, authorized, and consented to it. This instruction furnished no basis for granting the motion for a new trial. No other ground is argued.

*Exceptions overruled.*
*Judgments affirmed.*