## COMMONWEALTH *vs.* ROBERT H. NEFUS, JR.

Berkshire. Sept. 11. — Oct. 1, 1883. FIELD & W. ALLEN, JJ., absent.

At the trial of an indictment for adultery, a witness testified that he had seen the defendant write once, and had been accustomed for twenty years to compare manuscript writings, and handwriting and penmanship, and was allowed to give his opinion that certain communications in cipher, written to the woman with whom the adultery was alleged to have been committed, were in the defendant's handwriting. *Held,* that the testimony in regard to the qualification of the witness as an expert was sufficient to warrant the reception of his opinion.

At the trial of an indictment for adultery, if the defendant, while testifying in his own behalf, admits the correctness of the explanation by an expert of certain communications in cipher, written by the defendant and by the woman with whom the adultery is alleged to have been committed, he has no ground of exception to the admission of the testimony of the expert.

At the trial of an indictment for adultery, a witness, competent to testify as an expert, testified in explanation of letters written in cipher by the defendant and the woman with whom the adultery was alleged to have been committed ; and the defendant, while testifying in his own behalf, admitted the correctness of the testimony of the expert. A communication written upon a newspaper in a cipher, which the same key fitted, was then offered in evidence ; and there was testimony that it appeared to be in the defendant's handwriting. It contained plain evidence of adultery with the woman to whom it was addressed. She was called by the pet name used in a letter which the defendant admitted he wrote to the woman named in the indictment. Both communications contained a reference to a threat to arrest the writer for an abortion committed upon the woman to whom they were each addressed, and both contained certain similarities of expression. *Held,* that the writing upon the newspaper was properly submitted to the jury.

At the trial of an indictment for adultery, the woman with whom the adultery was alleged to have been committed testified as a witness for the defendant, denying the fact of adultery. The government sought to contradict her by showing that a letter, offered in evidence, was written by her. The contents of the letter tended to show illicit intercourse between the writer and the person to whom it was addressed. She denied that she wrote the letter, although she said it looked like her handwriting. Two other manuscripts were produced, with direct evidence that she wrote them, and were used as standards of comparison for the letter in question. One person acquainted with her handwriting testified that the letter was in her handwriting ; and another person, competent to express an opinion, testified that the letter appeared to be in the same handwriting with that of one of the other manuscripts. It was written in a cipher which had been used by the defendant in writing to her ; and he testified that she understood this cipher and had written to him in it. The envelope of the letter was addressed to a woman in a certain town, with the number of a box in the post-office ; and there was evidence that that was the number of the defendant's box in the post-office in that town, and that he had taken from that post-office and box another letter with a similar address, and had opened and read it. The letter also contained, twice repeated, three initials, the meaning of which was not explained, but which apparently had some secret meaning, and which were

also used by the defendant in a letter acknowledged by him to have been sent by him to the same woman. *Held*, that the letter was properly submitted to the jury.

C. Allen, J. This was an indictment for adultery. The questions presented relate to the admission of certain communications in cipher, supposed to have been written by the defendant, and by the woman with whom the adultery was charged to have been committed.

1. The competency of an expert to testify in respect to the identity of handwriting with an established standard depends very much upon the discretion of the presiding judge, and an exception to his decision will rarely be sustained. In this instance, the witness testified that he had seen the defendant write once, and that for twenty years he had been accustomed to compare manuscript writings, and handwriting and penmanship. In the absence of anything to cast a doubt upon his qualifications, this was sufficient to warrant the reception of his opinion. *Keith* v. *Lothrop*, 10 Cush. 453.

2. No question remains open upon the competency of the testimony in explanation of the cipher, because the defendant himself, while testifying in his own behalf, admitted its correctness.

3. The translation of the writing in cipher upon the newspaper was properly submitted to the jury. The same key fitted it. There was testimony that it appeared to be in the defendant's handwriting. It contained plain evidence of adultery with the woman to whom it was addressed. The person addressed was called by the pet name used in a letter which the defendant admitted that he wrote to the woman inculpated with him in the indictment. Both of these communications contained a reference to a threat to arrest the writer for an abortion committed upon the woman to whom they were respectively addressed, and both contained similarities of expression which might well be considered as unlikely to occur in writings addressed by different men to different women. The writing, therefore, had a legitimate tendency to prove adultery by the defendant with the woman mentioned in the indictment.

4. No exception was taken or argued, and no ruling was asked, as to the admission of the address on the envelope in

which the newspaper was contained, when produced in court. The handwriting of the address apparently was similar to that upon the newspaper. And, for the reasons already given, independently of the envelope, there was sufficient evidence to warrant the judge in submitting to the jury the writing upon the newspaper.

5. Declarations or confessions by the woman, not shown to have been made in the defendant's presence or communicated to him, would not be competent for the purpose of proving the independent fact of adultery on his part. But when the defendant called her as a witness on his behalf, and introduced her testimony denying the fact of adultery, it became competent to contradict her, by showing oral or written declarations, made by her at other times, inconsistent with her testimony. The government undertook thus to contradict her by showing that a certain letter was written by her. The contents of the letter had a clear tendency to show illicit intercourse between the writer and the person to whom it was addressed. She denied that she wrote the letter, although she said it looked like her handwriting. Two other manuscripts were produced, with direct evidence that she wrote them, and were used as standards of comparison for the letter in question. One person acquainted with her handwriting testified that the letter was in her handwriting, and another person competent to express an opinion testified that the letter appeared to be in the same handwriting with that of one of the other manuscripts. It was written in the same cipher used by the defendant, and he testified that she understood this cipher, and had written to him in it. The envelope of the letter was not addressed to the defendant himself, but to a woman in Dalton, Box 50, and there was evidence that the defendant's box in the post-office in Dalton was No. 50, and that he had taken from that post-office and box another letter with the like address, and had opened and read it. The letter in question also contained, twice repeated, the initials "P. M. S.," the meaning of which was not explained, but which apparently had some secret meaning, and which were also used by the defendant in a letter acknowledged by him to have been sent by him to the same woman. These various circumstances and features had a legitimate tendency to show that the letter in

question was written by her to him, and thus to contradict her.                                    *Exceptions overruled.*

*H. C. Joyner*, for the defendant.

*E. J. Sherman*, Attorney General, for the Commonwealth.