COMMONWEALTH *vs.* LUIGI ANALETTO.

Middlesex.    May 1, 1950. — June 7, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Forgery. Practice, Criminal,* Stenographer. *Evidence,* Relevancy and materiality, Admitted without objection, Contradiction of witness.

It is not necessary to a conviction for forging and uttering with intent to injure or defraud under G. L. (Ter. Ed.) c. 267, §§ 1, 5, to show that there was an intent to injure or defraud a particular person, or that anyone actually was injured or defrauded.

A verdict of guilty of forging and uttering a check with intent to injure or defraud in violation of G. L. (Ter. Ed.) c. 267, §§ 1, 5, was warranted by evidence of the circumstances of the issuance of the check by a city payable to a contractor and by evidence that the contractor never saw the check until long afterwards and that in the meantime it was indorsed in the name of the contractor by the defendant without the contractor's authority and was cashed by the defendant.

The defendant at a trial for a felony other than murder or manslaughter, not made subject to G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, by order of the trial judge, was not entitled as of right to have a stenographer appointed to take the testimony, and a refusal by the trial judge to appoint a stenographer did not per se show an abuse of discretion.

Evidence that a certain person was a "drinking man" was not relevant to show that he was suffering from the effects of intoxicating liquor at a particular time; nor was evidence that he was not a "drinking man" relevant to show that he was not suffering therefrom at that time.

No error was shown at a criminal trial in the exclusion of immaterial evidence offered by the defendant to contradict immaterial testimony previously given by a witness for the Commonwealth without objection.

INDICTMENT, found and returned on February 9, 1949.

The defendant was found guilty at a trial in the Superior Court before *Murray*, J., and alleged exceptions.

*E. M. Dangel*, (*L. E. Sherry & R. A. Marden* with him,) for the defendant.

*E. Martin*, Assistant District Attorney, for the Commonwealth.

SPALDING, J.  The defendant was found guilty on two counts of an indictment, the first charging him with forging a check "with intent to injure and defraud," and the second with uttering the check with similar intent.

1. The defendant argues that the judge erred in denying his motion for a directed verdict.  The evidence pertinent to this exception is as follows:  In 1947 one McLeod and one Silva, as partners, were carrying on in Somerville a contracting business under the name of T. & M. Construction Company.  The business of the partnership consisted in laying asphalt "hot top" on driveways and parking lots. In May of that year the city of Somerville advertised for bids for paving the yard of the Burns School.  The defendant asked McLeod to measure this yard and to "give him a price for laying hot top" on it.  McLeod measured the yard and told the defendant that he would do the job for $1,910.  The defendant told McLeod to go to the city hall and see one Kennedy who was commissioner of public buildings.  McLeod saw Kennedy and signed a document which was introduced in evidence as exhibit 1.  This exhibit, with an exception not here material, comprises two documents. One is a contract signed by Kennedy and the mayor on behalf of the city, and by McLeod for the T. & M. Construction Company.  Attached to and made a part of the contract was a document entitled "Proposal for the furnishing

of all labor, [and] materials . . . necessary for the resurfacing and repair of asphalt paving at the Burns School." It could have been found that it was the latter document that McLeod signed when he went to the city hall to see Kennedy. McLeod testified that when he signed exhibit 1 none of the blanks on the first page was filled in and on the last page nothing had been written on the blank where the amount of the bid was to be stated. When put in evidence, the blank had been filled in so that the amount of the bid appeared as $3,710. Both the bid and the contract were dated June 3, 1947. Under the latter the amount which the city agreed to pay for the Burns School job was the same as that appearing in the bid. The record reveals virtually nothing concerning the details of the making of the contract beyond the fact that most of the blanks on the first page were filled in by Kennedy.

Later, after learning that his firm had been awarded the contract, McLeod saw the defendant, who told him to go ahead with the work. McLeod agreed to do the job for $1,910. After the work had commenced, McLeod, at the defendant's request, gave him some billheads of the T. & M. Construction Company. No bill to the city was ever made out by McLeod. In July a bill for part of the work was submitted to the city on a billhead of the T. & M. Construction Company. Under date of August 8, 1947, a check was issued by the city for $2,881.50 payable to the T. & M. Construction Company and this was given to McLeod by the defendant. McLeod cashed it and, after deducting the amount ($1,910) for which his firm had agreed to do the job, paid over the balance to the defendant.

Shortly after the work was completed, a bill was presented to the city for the amount of $828.50, the balance due under the contract. On August 20, 1947, a check for this amount was issued by the city. Shortly thereafter this check was cashed by one D'Ovidio, the proprietor of the East Star Cafe in Somerville. The check bore the following indorsement: "T. and M. Construction Co. Tom. MacLoed." Concerning the cashing of the check there was a conflict of tes-

timony. McLeod testified that he never rendered the bill for which this check was drawn, that the indorsement was not made or authorized by him, and that he never saw the check until it was shown to him by State police officers sometime in December, 1948. The jury could find from his testimony that he never received any of the proceeds from the check. The defendant admitted that the indorsement was in his handwriting, but said that this was done in the following circumstances: McLeod telephoned him one night and said he had been down to the East Star Cafe to get the check cashed but was unsuccessful. At the defendant's suggestion they met on the following day and went to the East Star Cafe to get the check cashed. McLeod told the defendant that he was unable to indorse the check because he had had a "very bad night" and had "the shakes," and asked the defendant to do it for him. The defendant complied with this request. D'Ovidio, the proprietor of the cafe, informed the defendant that he did not have enough money on hand to cash the check. The defendant told him to let him have $128 and to pay him the balance later. D'Ovidio gave the defendant $128 which the latter turned over to McLeod. Later that afternoon the defendant "picked up the $700."

The evidence warranted a finding that the defendant had forged and uttered the check in question. But the statutes which define these offences (G. L. [Ter. Ed.] c. 267, §§ 1 and 5) require that the forging and uttering be done "with intent to injure or defraud." It has been held that there need not be an intent to injure or defraud a particular person. An intent to defraud anyone is sufficient. Nor is it necessary to show that any person actually was defrauded. *Commonwealth* v. *Bond*, 188 Mass. 91. *Commonwealth* v. *Segee*, 218 Mass. 501, 504–505. *Commonwealth* v. *Peakes*, 231 Mass. 449, 456. An intent to defraud could have been found here. The bank upon which the check was drawn could have refused to honor the check on the ground that the payee's indorsement had been forged. G. L. (Ter. Ed.) c. 107, § 45. Had it done so D'Ovidio, who cashed it, would

have been in the position of one who had given money for a worthless instrument. If on the other hand the bank honored the check, it would have no right to charge that amount against the account of its depositor, the city, if the latter had satisfied the requirements of G. L. (Ter. Ed.) c. 107, § 46. *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397. In such a case the bank would have been defrauded. Perhaps there are others who might have been defrauded. We make no attempt to exhaust the possibilities. One forging an indorsement on a check is presumed to intend the probable consequences of his acts. One of those consequences is that whoever pays out money under the belief that the indorsement is genuine is likely to be defrauded. See *Commonwealth* v. *Henry,* 118 Mass. 460, 463. The evidence was sufficient to warrant a conviction under G. L. (Ter. Ed.) c. 267, §§ 1 and 5, and the defendant's motion for a directed verdict was rightly denied.

2. The defendant presented a motion that a stenographer be appointed in accordance with G. L. (Ter. Ed.) c. 278, § 33A. This motion was denied subject to the defendant's exception. Section 33A provides that in a trial upon an indictment for murder or manslaughter "or upon an indictment or complaint for any other felony by order of a justice of the superior court made subject to this and the six following sections as provided in section thirty-one, the evidence *shall* be taken by an official stenographer or by a stenographer appointed by the court, and transcribed in such number of copies as the court may direct" (emphasis supplied). The crimes charged in this indictment were felonies (G. L. [Ter. Ed.] c. 267, §§ 1 and 5; G. L. [Ter. Ed.] c. 274, § 1) and the trial could have been made subject to the provisions of c. 278, §§ 33A–33G, but it appears that it was not; the case comes here on a bill of exceptions and not by appeal. In criminal trials which are not made subject to these sections the appointment of a stenographer to take the testimony is not mandatory. The appointments of stenographers for trials in the Superior Court are governed by G. L. (Ter. Ed.) c. 221, §§ 82, 83, and 87, and we

find nothing in these provisions that required the proceedings below to be taken by a stenographer.[1] Compare the earlier provisions of G. L. c. 221, §§ 82, 83, 84, 85, and 87, with the amendments made by St. 1927, c. 332.

Although contending that he was entitled to a stenographer as of right, the defendant also contends that if the matter was discretionary there was an abuse of discretion. This contention cannot be sustained. The defendant has not shown that he was in any way prejudiced by the denial of his motion. The bill of exceptions, which comprises twenty-two pages of the record, appears to contain all that is material to the exceptions argued. The defendant does not contend otherwise. His position seems to be that the failure to appoint a stenographer, in and of itself, imports prejudice. This argument does not impress us. See *Commonwealth* v. *Donaruma*, 260 Mass. 233, 237–238. Compare *Brooks* v. *National Shawmut Bank*, 323 Mass. 677.

3. McLeod, called by the Commonwealth, on cross-examination testified without objection that he was not a drinking man. The defendant sought through his witness Silva (McLeod's partner) to "introduce evidence that McLeod was a drinking man," but the judge excluded this evidence subject to the defendant's exception. The defendant in support of this exception argues that the evidence would have contradicted the testimony of McLeod and would have tended to corroborate the testimony of the defendant to the effect that McLeod had "the shakes" on the morning that the check was indorsed. There was no error. Evidence that McLeod was a drinking man cannot be received to show that at a particular time he was suffering from the effects of intoxicating liquor. *Commonwealth* v. *Rivet*, 205 Mass. 464, 466. *Carr* v. *West End Street Railway*, 163 Mass. 360, 361. *Crane Co.* v. *Pension*, 224 Mass. 135,

---

[1] Section 87 provides that the "justices of the superior court may make regulations not inconsistent with law relative to the assignments, duties and service of stenographers appointed for that court, and any other matters relative to such stenographers." It appears that regulations have been adopted by the Superior Court relative to stenographers, but they contain no provision which makes the assignment of a stenographer to a criminal session obligatory. Nor is any such provision contained in the rules of that court.

137. The testimony of McLeod that he was not a drinking man was immaterial, and the fact that it was admitted without objection did not give the defendant the right to contradict it. *Parker* v. *Dudley,* 118 Mass. 602. *Carr* v. *West End Street Railway,* 163 Mass. 360, 361. *Hamsy* v. *Mudarri,* 195 Mass. 418. At most the admissibility of the evidence was in the discretion of the trial judge. *Commonwealth* v. *Dale,* 264 Mass. 535, 537.

*Exceptions overruled.*