Commonwealth *vs.* Ralph M. O'Connell.

Berkshire. December 5, 2002. - February 12, 2003.

Present: Marshall, C.J., Greaney, Spina, Sosman, & Cordy, JJ.

*Practice, Criminal,* Required finding. *Forgery. Negotiable Instruments,* Forgery. *Uttering Forged Instrument. Larceny. Evidence,* Intent, Opinion, Argument by prosecutor.

At the trial of indictments charging forgery, uttering, and larceny over $250, based on the theory that the defendant had forged his father's signature on five checks (cashed at two banks) that the defendant made payable to himself, endorsed, then cashed, there was sufficient evidence from which the jury could reasonably conclude that the defendant forged the signatures of the maker on the five checks and, as a consequence, the evidence was also sufficient to show, for purposes of the crime of uttering, both that the checks were forged, and that at the time the defendant cashed the checks, he knew or believed that the checks were forged [662-663]; further, with respect to the crimes of forgery and uttering, the evidence was sufficient to show that the defendant acted with an intent to injure or defraud someone when he forged and uttered the checks [664], and, with respect to all three crimes with which the defendant was charged, the evidence showed that the defendant was not an authorized signator on either of the two bank accounts [664-665]. Cordy, J., dissented.

At the trial of indictments charging forgery, uttering, and larceny over $250, the judge acted within his discretion in admitting, as an exemplar of the victim's signature against which the jury could compare the maker's signatures on the checks in evidence, only that portion of an affidavit of forgery that contained the signatures of the victim and a bank official who witnessed and notarized the affidavit. [665-666]

At the trial of indictments charging forgery, uttering, and larceny over $250, the judge did not err in admitting in evidence a bank official's testimony concerning an affidavit of forgery used in the bank's procedure to recredit a customer's account, where the judge instructed the jury that the victim's statements to bank officials could not be considered as proof that the checks were not properly payable, but only to explain why the bank officials acted as they did. [666]

At the trial of indictments charging forgery, uttering, and larceny over $250, the judge's decision to allow a bank official, who was familiar with the victim's signature, to give opinion testimony based on that familiarity was not clearly erroneous. [666-668]

At the trial of indictments charging forgery, uttering, and larceny over $250 in which the prosecutor commented in his opening statement that the victim would testify that he had not signed the checks in question, although the

victim did not, in fact, testify during the trial, there was no error creating a substantial risk of a miscarriage of justice, where there was no evidence that the prosecutor made the statement other than in good faith, with the expectation that the victim would, in fact, testify as anticipated; where the judge instructed the jury before the opening statements, and again in his final instructions, that opening statements were not evidence; and where the judge's further limiting instructions to the jury emphasized that certain other statements by the victim were not to be used as evidence that the checks were not properly payable. [668-669]

INDICTMENTS found and returned in the Superior Court Department on August 21, 1998.

The cases were tried before *Daniel A. Ford,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

*Jon R. Maddox* for the defendant.

SPINA, J. The defendant, Ralph M. O'Connell, appeals from five convictions each of forgery (G. L. c. 267, § 1), uttering (G. L. c. 267, § 5), and larceny over $250 (G. L. c. 266, § 30) involving five checks cashed at two banks. On appeal, the defendant alleges that (1) his motion for required finding of not guilty should have been allowed; (2) certain information erroneously admitted in evidence had an unduly prejudicial effect on the jury; and (3) the prosecutor's opening statement created a substantial risk of a miscarriage of justice. In a two-to-one decision, the Appeals Court concluded that the evidence was insufficient to support the convictions, and reversed. See *Commonwealth* v. *O'Connell,* 55 Mass. App. Ct. 100 (2002). Specifically, the Appeals Court concluded that "the evidence was not sufficient to prove beyond a reasonable doubt that the signatures [of the maker on the five checks] were unauthorized and that the defendant thereby acted with the intent to defraud." *Id.* at 107. We granted the Commonwealth's application for further appellate review. We conclude that the evidence was sufficient to find the defendant guilty of the crimes charged, and we affirm the convictions.

1. *Facts.* The jury could have found the following facts. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). In

April, 1998, the defendant cashed five checks payable to himself
and drawn on his father's accounts at City Savings Bank and
Lee Bank, both in Lee. The following month, his father, Stephen
O'Connell (Mr. O'Connell)[1] went to the banks and complained
that checks drawn on his accounts were "not properly pay-
able." For purposes of this case, a check is "not properly pay-
able" if it is stolen or forged.[2] When a customer makes such a
complaint the banks implement a procedure that the customer
must follow before his or her account is recredited the amount
of a stolen or forged check.[3] First, the bank requires the
customer to go to the local police department to report the
incident. The bank awaits notification by the local police depart-
ment that such a report has been filed. The customer then returns
to the bank and signs an affidavit of forgery, certifying to the
bank that the customer did not sign the check and that it was
unauthorized.[4] Finally, the bank recredits the customer's
account.[5]

Four of the checks were drawn on an account at Lee Bank,
where Susan Brown, a bank vice-president, explained to Mr.
O'Connell the bank's procedure for recrediting his account. He
notified the local police, then returned and signed a piece of
paper that she witnessed and notarized.[6] Brown compared the
signature of the maker on the checks with the signature she had
just witnessed Mr. O'Connell make, and determined that they
were not similar. She also compared the signature of the maker
on the checks with the signatures of the other two authorized

[1]Stephen O'Connell did not testify at trial.

[2]A check presented under an unauthorized signature is not "properly pay-
able" within the meaning of G. L. c. 106, § 4-401. *First Nat'l Bank* v. *Hovey*,
10 Mass. App. Ct. 715, 721 (1980).

[3]See G. L. c. 106, § 4-406, "Customer's duty to discover and report
unauthorized signature or alteration."

[4]See H. Lemelman, Uniform Commercial Code § 4-406 — Form 1.5,
"Forged Check Signature Affidavit" (2d ed. 1984 & 2002 Supp.) (a form af-
fidavit similar to the one described at trial).

[5]A customer who makes a timely complaint that a check drawn on his or
her account was not authorized is entitled to have the bank recredit the
account. See *Stone & Webster Eng'g Corp.* v. *First Nat'l Bank & Trust Co.*,
345 Mass. 1, 9 (1962). See also G. L. c. 106, §§ 4-401 (*a*), 4-406 (*f*).

[6]Due to objections from the defense, Brown was not allowed to testify that
Mr. O'Connell had signed an affidavit of forgery, but rather was permitted to
testify only that he signed a piece of paper, which she notarized.

signators on the account, Mr. O'Connell's other sons, Stephen and Thomas O'Connell. She then recredited Mr. O'Connell's account $9,000, the total of the four checks drawn on the account at Lee Bank. The checks were admitted in evidence, as was a copy of Mr. O'Connell's signature witnessed by Brown. The four checks had been endorsed by the defendant and, in two cases, his driver's license number was written on the back of the check by the teller who paid him after first verifying that he was the person depicted on the license and the signature on the back of the check matched the signature on the license. Bank surveillance photographs of the defendant at the bank taken at the time the checks were cashed were admitted in evidence.

Mr. O'Connell had also lodged a complaint at City Savings Bank regarding the fifth check. He filed an affidavit in compliance with that bank's policy. The fifth check, in the amount of $2,000, and a bank surveillance photograph of the defendant at the bank taken at the time the check was cashed were admitted in evidence. The fifth check was endorsed by the defendant.

The jury had the signature of the defendant on the back of each of the checks, all of which had been admitted in evidence without objection, to compare with the handwriting on the face of each check.

2. *Motion for required findings of not guilty.* The defendant filed a motion for required findings of not guilty at the close of the Commonwealth's evidence, and again at the close of all the evidence.[7] The motions were denied. The defendant argues that the evidence was insufficient to show that (a) he forged Mr. O'Connell's signature as maker of the checks; (b) even if he had signed the checks, that he had the requisite intent to injure or defraud; or (c) he acted without the authority of any of the cosignators on the account from the Lee Bank.

When deciding a motion for required findings of not guilty at the close of the Commonwealth's evidence, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt"

---

[7]The defendant presented no evidence.

(emphasis in original). *Commonwealth* v. *Latimore, supra* at 677, quoting *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979).

(a) *Forgery.* The offense of forgery (G. L. c. 267, § 1) requires proof, as one of its elements, that the defendant falsified or altered one or more significant parts of the check. See *Commonwealth* v. *Boutwell*, 129 Mass. 124, 124 (1880). The Commonwealth's case on the indictments alleging forgery depends on a finding that the defendant forged the maker's signatures on the checks, as it did not proceed on a joint venture theory. The defendant argues that, to prove forgery, the Commonwealth needed the testimony of Mr. O'Connell to the effect that he did not sign the checks. The defendant also argues that the Commonwealth could only show through expert testimony that he forged the five checks, and that, because there was no expert testimony that he authored the maker's signature on each check, the evidence was insufficient to establish that he committed the crime of forgery.

There is no merit to the defendant's claim that the Commonwealth needed the testimony of Mr. O'Connell to prove forgery. The defendant relies on *Commonwealth* v. *Hutchinson*, 1 Mass. 7, 8 (1804), where this court said that "it was, in the present case, impossible to prove the forgery" without the testimony of the person whose promissory note the defendant allegedly forged. That case is distinguishable because the note alleged to have been forged was not produced by the government. Here, the five checks the defendant was alleged to have forged were admitted in evidence. The Commonwealth did not need Mr. O'Connell's testimony to prove that the maker's signature on each check was forged. Although the testimony of the person whose signature was allegedly forged has relevance, and typically it is presented whenever available, it is not necessary in all cases.

The Commonwealth did not need expert testimony to prove forgery. Where signatures of the defendant have been admitted in evidence as genuine and submitted to the jury, they may be used as a standard against which the jury may compare the disputed signatures and decide the question of authorship without the need for expert testimony. See *Commonwealth* v. *O'Brien*, 254 Mass. 86, 90 (1925) (jury could make comparisons

for themselves); *Levi* v. *Rubin*, 241 Mass. 40, 41 (1922) (expert testimony permissible but not necessary); *Noyes* v. *Noyes*, 224 Mass. 125, 130 (1916) (opinion of jury is quite as good as witness of ordinary experience); *Buker* v. *Melanson*, 8 Mass. App. Ct. 325, 330 (1979) (jury competent to draw inferences as to authenticity). See also Proposed Mass. R. Evid. 901, noting, in advisory committee note example 3, that comparison to a genuine specimen by the trier of fact is accepted practice in Massachusetts; 2 J. Wigmore, Evidence § 570, at 790-791 (Chadbourn rev. ed. 1979) ("any person able to read and write is competent to form and to express a judgment as to the genuineness of handwriting . . . no special skill in judging of writings is required . . . when the specimens . . . themselves [are] before the jury, they may examine them to form an opinion as to the standard or type of writing"); Annot., 80 A.L.R.2d 272 (1961).[8]

The five checks, each with the defendant's endorsing signature on the reverse side, were admitted in evidence without objection. The jury thus had five samples of the defendant's signature to serve as standards against which they could compare the signature of the maker on each check. There was sufficient evidence from which the jury could reasonably conclude that the defendant forged the signatures of the maker on the five checks.

Because the evidence was sufficient to support a conviction of forgery as to each check, it was also sufficient to show, for purposes of the crime of uttering (G. L. c. 267, § 5), both that the checks were forged, and that at the time the defendant cashed the checks, he knew or believed that the checks were forged. See *Commonwealth* v. *Analetto*, 326 Mass. 115, 118 (1950).

---

[8]See also *Parker* v. *State*, 12 Md. App. 611, 616 (1971) ("The genuineness of the writings . . . could be determined by the trier of the facts, and the aid of expert opinion evidence on the point was not required"); *State* v *Owen*, 130 N.C. App. 505, 509 (1998) ("a jury may compare a known sample of a person's handwriting with the handwriting on a contested document without the aid of either expert or lay testimony"); *State* v. *LeDuc*, 306 N.C. 62, 73 (1982) (giving history of common-law rule and stating that, once judge has determined that signature for comparison is genuine, then disputed signature and known one can be submitted to jury who may "in the discretion of the court, be permitted to resolve the issue of forgery without expert assistance").

(b) *Intent to injure or defraud.* The crimes of forgery and uttering both require proof of an intent to injure or defraud. See *Commonwealth* v. *Analetto, supra; Commonwealth* v. *Boutwell, supra.* The Commonwealth need not show that the defendant intended to injure or defraud a particular person. It is sufficient that he intended to injure or defraud someone. See *Commonwealth* v. *Analetto, supra* (uttering); *Commonwealth* v. *Segee,* 218 Mass. 501, 504 (1914) (forgery). With respect to both crimes, proof of intent to injure or defraud may be inferred from the circumstances. See *Commonwealth* v. *Analetto, supra* at 118-119. Here, there was evidence that the defendant presented checks for payment over signatures that he forged, and therefore knew or had reason to know were forged, and the bank paid out money under the belief that the maker's signature was genuine. The evidence was sufficient to show that he acted with an intent to injure or defraud someone when he forged and uttered the checks. See *id.*

(c) *Authority.* Contrary to the defendant's assertion, lack of authority is not an essential element of any of the offenses for which the defendant was indicted.[9] However, authority may be raised as a defense, and, if so raised, the Commonwealth then bears the burden of proving beyond a reasonable doubt the absence of authority. Cf. *Commonwealth* v. *Jones,* 372 Mass. 403, 406 (1977) (involving license to carry firearm). See G. L. c. 278, § 7. To raise the defense of acting under authority, the defendant must so notify the prosecutor and file a copy of the claim with the clerk of the court where the case is pending.

---

[9]The elements of the crime of forgery, G. L. c. 267, § 1, are (1) falsely making all or part of a document or instrument; (2) with the intent to defraud. See *Commonwealth* v. *Apalakis,* 396 Mass. 292, 295-296 (1985). The elements of the crime of uttering, G. L. c. 267, § 5, are "(1) offering as genuine; (2) an instrument; (3) known to be forged; (4) with the intent to defraud." *Commonwealth* v. *Levin,* 11 Mass. App. Ct. 482, 496 (1981). The elements of the crime of larceny over $250 by false pretenses, G. L. c. 266, § 30, are (1) knowingly making a false statement of fact; (2) with the intent that the person to whom the statement is made should rely on it as true; (3) reliance by such person; (4) as a result, the person parts with personal property or money worth more than $250. See *Commonwealth* v. *Mills,* 436 Mass. 387, 396-397 (2002).

Mass. R. Crim. P. 14 (b) (3), 378 Mass. 874 (1979).[10] Failure to do so renders the claim of authority unavailable as a defense. See *id.* Here, there was no notification under the rule, nor was there a request for relief from the effect of the rule and to proceed with a defense of authority. Moreover, there was no evidence that the defendant had been authorized to sign any check on behalf of an authorized signator as would require the Commonwealth to prove beyond a reasonable doubt that the defendant acted without authority.[11] Cf. *Commonwealth* v. *Jones,* *supra.* The evidence showed that the defendant was not an authorized signator on either bank account. The Commonwealth was required to prove nothing more on the issue of authority.

The defendant's reliance on *Commonwealth* v. *Kepper,* 114 Mass. 278 (1873), is misplaced. In that case the court said it is permissible to ask a witness whose signature was alleged to have been forged whether he signed the instrument, and whether he authorized anyone to sign it. The court did not hold that lack of authority is an element of forgery.

The motion for required findings of not guilty was correctly denied.

3. The defendant contends that it was prejudicial error for the judge to admit in evidence any portion of the affidavit of forgery signed by Mr. O'Connell. He argues that the affidavit was inadmissible hearsay and did not qualify as a business record under G. L. c. 233, § 78, because the bank official who witnessed the customer's signature had no personal knowledge of the truthfulness of the statements made in the affidavit and thus the affidavit could not qualify as a business record. See *Wingate* v. *Emery Air Freight Corp.,* 385 Mass. 402, 406-407 (1982).

---

[10]Rule 14 (b) (3) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 874 (1979), states, in relevant part: "If a defendant intends to rely upon a defense based upon a . . . claim of authority . . . he shall [in a timely fashion] notify the prosecutor in writing of such intention and file a copy of such notice with the clerk. If there is a failure to comply with the requirements of this subdivision, a . . . claim of authority . . . may not be relied upon as a defense. . . ."

[11]The judge did not instruct the jury on the question of authorization; the defendant had requested no such instruction. There has been no claim of error with respect to the judge's instructions.

The document that was admitted was neither the actual affidavit of forgery, nor was it admitted as a business record. The only portions of the affidavit admitted in evidence were the signatures of Mr. O'Connell and Susan Brown, who witnessed and notarized the affidavit. It was within the judge's discretion to admit this evidence as an exemplar of Mr. O'Connell's signature against which the jury could compare the maker's signatures on the checks in evidence. See *Nunes* v. *Perry*, 113 Mass. 274, 276 (1873). There was no error.

4. The defendant argues that the admission of the bank official's testimony concerning an "affidavit of forgery" used in the bank procedure to recredit a customer's account had a prejudicial impact on the jury because there was no evidence as to the details of what Mr. O'Connell told bank officials, and the jury would not be able to resist inferring from evidence of Mr. O'Connell's compliance with bank procedures that he told them that he did not sign the checks.

The testimony about the affidavit of forgery was admitted for the limited purpose of explaining the actions of the bank officials, to show that they followed a certain procedure resulting in the recrediting of Mr. O'Connell's account. The judge clearly and emphatically instructed the jury that Mr. O'Connell's statements to bank officials could not be considered as proof that the checks were not properly payable, but only to explain why the bank officials thereafter acted as they did. A jury are presumed to follow the judge's instructions. See *Commonwealth* v. *Girouard*, 436 Mass. 657, 669 (2002).

Moreover, the inference that the defendant claims was unavoidable, namely, that Mr. O'Connell told bank officials that he did not sign the checks, could not have been prejudicial. Such an inference does not establish that the defendant forged the checks, nor does it establish that the defendant knew the checks were forged, facts that the Commonwealth was required to prove. The necessary proof on those elements came from other sources, namely, the checks themselves and the bank surveillance photos. There was no error.

5. The defendant argues that Brown was not qualified to give opinion testimony to the effect that the signature of the maker of the checks "doesn't compare" and was "not similar" to Mr.

O'Connell's signature. He further argues that because Mr. O'Connell did not testify at trial, there was no competent evidence that the signature of the maker was not that of Mr. O'Connell.

The judge permitted Brown to testify that the signature of the maker on the four checks drawn on Lee Bank was not similar to the signature of Mr. O'Connell as she remembered having witnessed it once. "A witness who is familiar with a person's handwriting may give an opinion as to whether the specimen in question was written by that person." *Commonwealth* v. *Ryan*, 355 Mass. 768, 770-771 (1969). The question of a witness's qualifications to give such testimony is committed to the sound discretion of the trial judge, and the judge's decision will not be disturbed "unless it is made clearly to appear that it was based upon some erroneous view of legal principles, or that the ruling was not justified by the state of the evidence as presented to the judge at the time." *Id.* at 771. The defendant contends that the judge's decision to permit Brown to give opinion testimony based on her familiarity with Mr. O'Connell's signature was clearly erroneous because she had witnessed his signature only once, and ordinarily that is not sufficient to qualify a person to be sufficiently familiar with a person's handwriting for purposes of giving opinion testimony. *Id.* However, where a witness has seen the person write only once but also has experience comparing handwriting samples over a considerable period, the witness may qualify as an expert. See *Commonwealth* v. *Nefus*, 135 Mass. 533 (1883). Here, although Brown had seen Mr. O'Connell make his signature only once, she also had twenty years of experience in the banking business comparing signatures first as a teller, then as a customer service representative, and, at the time of trial, as vice-president of the bank in charge of security. The judge's decision to permit Brown to give opinion testimony was not clearly erroneous.[12] *Id.*

Even if Brown had not given her opinion at trial, the jury had

[12]Although we have not had occasion to decide this precise question, courts in other jurisdictions have held that, based on their experience looking at and comparing signatures in the course of the banking business, bank officials may be qualified to make comparisons of signatures and offer their opinions as to the similarity or lack thereof between signatures. See *State* v. *Riggs*, 186 Ariz. 573, 576 (1996), vacated on other grounds, 189 Ariz. 327 (1997) (bank

a genuine sample of Mr. O'Connell's signature for purposes of making their own comparison, without any need for the assistance of expert testimony. Although the jury did not need expert testimony to determine that Mr. O'Connell did not sign any of the checks, the judge had discretion to permit them to hear expert handwriting testimony. See *Levi* v. *Rubin*, 241 Mass. 40, 41 (1922); *Richardson* v. *Newcomb*, 21 Pick. 315, 317 (1838). The point is largely academic because the jury could have determined from the signatures on the checks alone that the defendant was the maker of the five checks.

6. The defendant alleges that the comment by the prosecutor in his opening statement that Mr. O'Connell would testify that he had not signed the checks in question was overly prejudicial in light of the fact that Mr. O'Connell did not, in fact, testify. The defendant contends that the prosecutor's opening statement "must have materially influenced the jury in reaching a guilty verdict," and the judge should have given a curative instruction. The issue is raised for the first time on appeal, so we review to determine if any error created a substantial risk of a miscarriage of justice.

There is no evidence that the prosecutor made the statement other than in good faith, with the expectation that Mr. O'Connell would, in fact, testify as anticipated. See *Commonwealth* v. *Thomas*, 429 Mass. 146, 157 (1999) ("A prosecutor in his opening may explain the facts that he expects to prove during the trial, so long as he has a good faith expectation that he will be able to do so with relevant and admissible evidence"). Mr. O'Connell had been served, in hand, with a subpoena for trial,

---

employee competent to render opinion on similarity of signatures); *Rice* v. *State*, 241 Ark. 570, 573 (1966) (bank vice-president competent to testify as to comparisons of signatures); *Spencer* v. *State*, 237 Ind. 622, 627 (1958) ("Bank employees experienced in examining signatures fall within the classification of experts in that field and are competent witnesses . . ."); *State* v. *Streit*, 248 Iowa 260, 262 (1957) (bank cashier, with five years' experience, accustomed to comparing signatures is competent to testify as expert); *Evans* v. *Commonwealth*, 230 Ky. 411, 422-423 (1929) ("An experienced banker would be permitted to say whether a document was genuine or forged . . ."); *Riley* v. *State*, 44 S.W. 498, 499 (Tex. Crim. App. 1898) (witness who had experience examining signatures as bank cashier was competent to testify as expert); *Wileman* v. *Commonwealth*, 24 Va. App. 642, 647 (1997) (work experience sufficient to qualify banker as expert witness as to authentication of signatures).

but he did not appear. The prosecutor had discussed the case with Mr. O'Connell several times prior to trial. When Mr. O'Connell did not appear on the morning that trial was scheduled to begin, the prosecutor sought a bench warrant for him. After it became clear during trial that Mr. O'Connell would not testify, defense counsel neither requested a curative instruction nor moved for a mistrial based on the prosecutor's opening statement.

The judge had instructed the jury before the opening statements, and again in his final instructions, that opening statements are not evidence. And, as mentioned in part 4 above, the judge emphasized to the jury that evidence of Mr. O'Connell's statements to the bank could be used only as background explanation for the bank's actions, not as evidence that the checks were not properly payable. That limiting instruction, given in connection with Brown's testimony about her interaction with Mr. O'Connell, would apply equally to any reference to that interaction made in the opening statement. There was no error.

*Judgments affirmed.*

CORDY, J. (dissenting). I agree with the court that the evidence admitted at trial, viewed in the light most favorable to the Commonwealth, was adequate to support a jury's finding that the defendant forged his father's (or brother's) name to the checks in question and then cashed them. However, with respect to the element of specific intent to defraud, I am of the view, as was the Appeals Court, that the Commonwealth failed to meet its burden.

If the defendant's father or his brother, who shared his father's name and was an authorized signatory on the account on which four of the five checks were drawn, had permitted the defendant to sign their name to the checks, there would be no intent to defraud. Neither testified at trial. The lack of such permission and the consequent intent to defraud can, of course, be proved circumstantially in a forgery case, even if the authorized signatory does not testify, albeit with some difficulty. Certainly,

an inference of intent to defraud might be fairly drawn in circumstances where the forged checks have been proved to be stolen, or the person forging the signature is proved to be a stranger to the account holder. That is not this case, however. Such an inference is of no more weight than an inference of permission, when the alleged forger and the authorized signatories are immediate family members. Where the evidence equally supports two inferences, one consistent with guilt and the other with innocence, it is insufficient to support a verdict of guilt beyond a reasonable doubt.

Without additional evidence on the issue of intent to defraud, the case fails. The Commonwealth recognizes this in its brief and in its oral argument, and points to additional evidence that it argues supports a finding of intent to defraud. Specifically, it directs us to the evidence of the bank's "forgery reporting procedure," the fact that pursuant to those procedures the father came to the bank, reported the checks as forged and filled out an "affidavit of forgery," and to the evidence that one of the banks recredited the father's account on the basis of its investigation. Indeed, at oral argument, the critical importance of the evidence that the bank recredited the account based on its forgery investigation crystalized. In a colloquy with a member of the quorum, the assistant district attorney acknowledged that evidence of the defendant's specific intent to defraud would have been inadequate without the evidence that the bank recredited the father's account as a *reversal for forgery*.[1] The problem is that the only evidence that the bank recredited the father's ac-

---

[1] THE JUSTICE: "If in this case the evidence had simply been that there is a bank check reversal policy without saying that it was a fraud policy, if it was just presented as a general reversal of transaction policy, would the evidence have been sufficient to get this case to the jury?"

THE ASSISTANT DISTRICT ATTORNEY: "I would suggest not, Your Honor, because we would still have to prove specific intent to defraud."

THE JUSTICE: "And the way you did it was by identifying this as a general reversal policy based on fraud, based on forgery?"

THE ASSISTANT DISTRICT ATTORNEY: "As well as the evidence that the other signatories, at least to the satisfaction of the bank . . . ."

THE JUSTICE: "But my question is limited to the one piece here. If this had been identified as a general check reversal policy without identifying it as a policy for forgery, a reversal for forgery, would the evidence have been suf-

count *as a reversal for forgery* derives from testimony concerning the bank's forgery procedures and that the father signed an "affidavit of forgery," testimony that was only admitted for the limited purpose of explaining the bank's actions in recrediting the father's account.[2] Any use of this testimony to establish that the checks were signed without the permission of the father (or the brother) and that the defendant therefore acted with specific intent to defraud would constitute a hearsay, and therefore impermissible, use of the evidence. Yet the Commonwealth admits that such evidence was necessary to sustain its burden of proving that the defendant acted with specific intent to defraud. For this reason alone, the defendant's convictions cannot stand. Therefore, I respectfully dissent.

---

ficient to go to the jury?"

THE ASSISTANT DISTRICT ATTORNEY: "Not on an indictment for uttering a forgery because it would have lacked the specific intent to defraud, Your Honor."

[2]"The testimony about the affidavit of forgery was admitted for the limited purpose of explaining the actions of the bank officials, to show that they followed a certain procedure resulting in the recrediting of Mr. O'Connell's account. The judge clearly and emphatically instructed the jury that Mr. O'Connell's statements to bank officials could not be considered as proof that the checks were not properly payable, but only to explain why the bank officials thereafter acted as they did." *Ante* at 666.