NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-314                                      Appeals Court

COMMONWEALTH vs. JOHN H. BIESIOT.

No. 16-P-314.

Suffolk.     January 10, 2017. - July 19, 2017.

Present: Grainger, Wolohojian, & Neyman, JJ.[1]

Practice, Criminal, Required finding. Evidence, Consciousness of guilt, Identity, Inference. Massachusetts Bay Transportation Authority.

Complaints received and sworn to in the Brighton Division of the Boston Municipal Court Department on February 18, 2010, February 15, 2012, and September 25, 2012.

The cases were tried before David T. Donnelly, J.

Dana Alan Curhan for the defendant.
Nicholas Brandt, Assistant District Attorney, for the Commonwealth.

NEYMAN, J. After a jury trial in the Brighton Division of the Boston Municipal Court Department, the defendant, John H. Biesiot, was convicted of fifteen counts of vandalizing

---

[1] Justice Grainger participated in the deliberation on this case prior to his retirement.

property.  On appeal, he contends that the evidence was insufficient to establish that he committed the offenses.[2]  We affirm in part and reverse in part.

Background.  We summarize the facts as the jury could have found them, reserving certain details for our analysis of the issues raised on appeal.  Lieutenant Detective Nancy O'Loughlin (Lieutenant O'Loughlin) of the Massachusetts Bay Transportation Authority (MBTA) police has spent nearly three decades investigating and prosecuting graffiti vandalism, also referred to as "tagging."  See Commonwealth v. Iago I., 77 Mass. App. Ct. 327, 331 (2010) (referencing practice of spray painting name or sign on particular location as "tagging").  She had extensive training on and experience with investigating tagging incidents and the tagging "subculture."[3]  Lieutenant O'Loughlin described how individuals engaged in the tagging subculture tend to adopt a "specific tag name," which is akin to a signature that represents the tagger's identity, and provides the tagger "credit or fame."  She testified that taggers often congregate and form a "crew," adopt a crew name, typically with a three-letter acronym, and "go out on missions" to place their crew and

---

[2] The defendant appeals from the judgments on fifteen charges in three separate complaints.

[3] Lieutenant O'Loughlin is the primary instructor for graffiti vandalism classes in Massachusetts, has taught "close to a hundred" trainings on the subject, and has participated in several hundred tagging investigations.

individual tags on a targeted location, often at or near rival crews' tags.  The crew tag is often placed "alongside the [individual's] tag, or somewhere in the tag."

In October, 2005, Lieutenant O'Loughlin, later assisted by members of a joint task force that included Boston police Detective William Kelley, began to investigate a series of related tagging incidents in the Boston area involving MBTA property.[4]  Specifically, on October 12, 2005, the tag "Wyse" was found on trains at the Orient Heights Station in the East Boston section of Boston.  On February 8, 2007, trains at either the Forest Hills or the Wellington train yard were vandalized with the tags "Wyse" and "D-30."  On January 12, 2008, fourteen trolleys at the Reservoir train yard in the Brighton section of Boston were vandalized with the tags "Wyse" and "D-30."  On March 16, 2008, a train at the Codman Square train yard was defaced with the tags "Wyse" and "D-30."  Finally, on March 15, 2010, a train at the underground Alewife train yard was vandalized with the tag "D-30."

Through their investigation, Lieutenant O'Loughlin and Detective Kelley learned that the "D-30" and "Wyse" tags were associated with the "Dirty Thirty" crew.  Lieutenant O'Loughlin also received a video and still photographs that depicted the

---

[4] Photographs of the tags from each of the incidents were admitted in evidence as exhibits.

defendant spray painting "D-30" on the side of a newspaper box.[5]
In June, 2008, O'Loughlin and Kelley executed a search warrant
at an apartment in the Allston section of Boston where the
defendant purportedly was staying.  They found, inter alia, mail
in the defendant's name, his name listed on the mailbox for
apartment 3, a pair of paint-stained sneakers, a canister with a
design containing the word "Wyse," street maps of Boston, and
"assorted graffiti photos, graffiti posters, some books, and the
like."

Criminal complaints issued, charging the defendant with two
counts of defacing the Alewife Station property, twelve counts
of defacing the Reservoir Station property, one count of
defacing the Codman Square property, five counts of defacing the
Orient Heights Station property, and two counts of defacing the
Forest Hills Station property.  The defendant was ultimately
convicted of vandalizing trains at the Reservoir, Codman Square,
and Alewife Stations, and acquitted of tagging trains at the
Orient Heights and Forest Hills Stations.[6]  This appeal ensued.

---

[5] The still photographs of the defendant spray painting "D-30" on the newspaper box were obtained "from an organization in Minnesota" and were admitted in evidence as exhibits.

[6] The defendant was sentenced as follows.  On the Codman Square conviction, one year and one day in the house of correction.  On the Reservoir convictions (all concurrent, from and after the Codman Square sentence):  three years' probation (on seven counts); ninety days in the house of correction, suspended for three years (on four counts); and thirty days in

Discussion.  Sufficiency of the evidence.  We review the
defendant's claims to determine "whether, after viewing the
evidence in the light most favorable to the prosecution, any
rational trier of fact could have found the essential elements
of the crime beyond a reasonable doubt."  Commonwealth v.
Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v.
Virginia, 443 U.S. 307, 318-319 (1979).

1.  Alewife incident.  The evidence was sufficient to
identify and convict the defendant as the individual who tagged
the trains at the Alewife station.  First, around 3:45 A.M. on
March 15, 2010, an MBTA employee discovered a freshly painted
"D-30" tag on a train he was preparing for service.  He knew
that the train had been tagged recently because he had observed
the outside of the train around 1:30 A.M. and saw nothing of
significance.  Additionally, he could smell fresh paint from
inside the train.  From within the train, he observed the
defendant in close proximity setting up a camera and tripod
aimed at the train.  The MBTA employee saw the defendant walk
toward the train and saw that a "flash went off."  The MBTA
employee also saw a second person talk to the defendant briefly
and then leave the area.  The MBTA employee was able to observe

the house of correction, suspended for three years (on one
count).  On the two Alewife convictions (concurrent sentences,
from and after the sentences on the Reservoir convictions):
three years' probation.

the defendant for twenty to twenty-five minutes and to identify him in photographs as well.[7]

In addition, photographs depicting the defendant spray painting "D-30" on the side of a newspaper box, and evidence obtained through the search of the Allston apartment connecting the defendant to graffiti, were admitted in evidence. The totality of this evidence, viewed in conjunction with Lieutenant O'Loughlin's and Detective Kelley's testimony regarding the Dirty Thirty crew and the use of crew names in tagging missions, allowed a rational jury to conclude that the defendant had vandalized the train. While it is conceivable that the defendant emerged in an underground MBTA train yard in the early morning hours, before the trains were in service, equipped with a camera and a tripod, and photographed freshly painted graffiti for non-nefarious reasons, a rational jury could have reasonably inferred that the defendant photographed himself in front of the freshly painted graffiti to memorialize his recent vandalism in order to gain "credit or fame." Compare Commonwealth v. Todd, 394 Mass. 791, 794-795 (1985) (lurking near murder scene combined with other conduct could be viewed as consciousness of guilt). Inferences need only be reasonable; they "need not be

---

[7] Lieutenant O'Loughlin showed the MBTA employee photographs from which he identified the defendant as the individual whom he had observed setting up the camera.

necessary or inescapable."  Commonwealth v. Merry, 453 Mass.

653, 661 (2009) (quotation omitted).

We are also not persuaded by the defendant's claim that, because the MBTA employee briefly observed a second unidentified individual near the crime scene, the jury could equally have inferred that someone else was the tagger.  The defendant alone lingered at the crime scene for at least twenty to twenty-five minutes and took great care to photograph the graffiti with a camera and tripod.  This is not a case where the evidence "tends equally to sustain either of two inconsistent propositions."  Id. at 663 (quotation omitted).

2.  Reservoir and Codman Square incidents.  The evidence concerning the Reservoir train yard incident and the Codman Square incident presents a more challenging analysis.  In both instances, the trains were tagged with "Wyse" and "D-30."  However, unlike the Alewife incident, there was no evidence that the defendant was at or near the Codman Square or Reservoir Stations on the dates of the offenses.  Moreover, there was no evidence that the defendant had ever been at or near these stations.

The Commonwealth contends that, although it could not place the defendant at the crime scenes with direct evidence, the tag "Wyse" was a "signature" or "moniker" associated with the defendant; that a jury could use the tag to identify the

defendant; and thus a jury could conclude that where property had been tagged with "Wyse," the defendant had painted the graffiti. The Commonwealth's argument falls short because the link between the defendant and the vandalism at the Codman Square and Reservoir Stations is too attenuated to sustain a conviction.

Viewed in the light most favorable to the Commonwealth, the evidence connected the defendant to graffiti generally, the tagging culture, the Dirty Thirty crew, and a version of a "D-30" tag.[8] The evidence also circumstantially linked the defendant to the name "Wyse," but the connection was limited to the canister found at the Allston apartment and the testimony that investigators operated under the belief that the defendant was "Wyse." While Lieutenant O'Loughlin proffered the opinion[9] that a tag is like a signature that speaks to a tagger's identity, notably absent was any evidence describing the purported unique features of the tags, or connecting the

---

[8] The photographs admitted in evidence show varying designs of the "D-30" tag. The Commonwealth did not present evidence, expert or otherwise, distinguishing the various tags or describing the purported uniqueness of any "D-30" designs.

[9] The defendant contends that the trial judge erred in admitting the investigating officers' opinion testimony because it was speculative, lacked proper foundation, and was based solely on inadmissible hearsay. Where we conclude that the Commonwealth presented insufficient evidence that the defendant committed the Codman Square and Reservoir Stations offenses, and where the alleged error had no bearing on the Alewife Station charges or convictions, we need not resolve this issue.

particular tags at the Codman Square and Reservoir Stations to the defendant.  To the contrary, the testimony at trial reflected differences in the various tags containing the word "Wyse," ranging in size, style, and elaborateness.

More problematic for the Commonwealth is the dearth of evidence linking or even comparing the design on the canister to any other tag bearing the name "Wyse."  Indeed, the canister was neither shown to the jury nor admitted as an exhibit.  Thus, the jury could not compare the alleged "signatures" and could not examine whether the "Wyse" on the canister matched or resembled the "Wyse" on the trains.  Contrast Commonwealth v. O'Connell, 438 Mass. 658, 662 (2003) ("Where signatures of the defendant have been admitted in evidence as genuine and submitted to the jury, they may be used as a standard against which the jury may compare the disputed signatures and decide the question of authorship without the need for expert testimony").

In short, the conclusory claim that the defendant "was Wyse," combined with the defendant's connection to graffiti materials found several miles from the crime scenes, several months after the graffiti was found, was insufficient to prove beyond a reasonable doubt that the defendant is the "Wyse" who tagged the particular property at issue on the dates in question.  Absent some evidence connecting the defendant to the design on the trains, a rational jury could not conclude beyond

a reasonable doubt that the defendant vandalized these trains. The Commonwealth cites no precedent that compels a different result.

We do not foreclose the possibility that a tag's unique features may, in combination with other direct or circumstantial evidence, provide sufficient indicia to prove a tagger's identity beyond a reasonable doubt. Such evidence might include expert testimony if the required foundation and reliability requirements are satisfied.[10] See Commonwealth v. Lanigan, 419 Mass. 15, 25-26 (1994); Mass. G. Evid. § 702 (2017). That notwithstanding, the Commonwealth did not present such evidence in this case. Hence, a rational jury would have needed to speculate that the "Wyse" tags on the train were so distinctive that they established beyond a reasonable doubt that only one person, the defendant, painted them.[11] A conviction may not rest upon such conjecture. See Commonwealth v. Mandile, 403 Mass. 93, 94 (1988). See also Commonwealth v. Cardenuto, 406 Mass. 450, 456-457 (1990) (circumstantial evidence insufficient to sustain arson conviction). Accordingly, the convictions on the Reservoir and Codman Square incidents cannot stand.

---

[10] We do not hold that expert testimony is required to prove a tagging case grounded in circumstantial evidence. See, e.g., Commonwealth v. O'Connell, 438 Mass. at 662-663.

[11] The Commonwealth did not proceed on a joint venture theory and the jury were not instructed on the elements of joint venture.

Conclusion.  On complaint numbers 1008-CR-196 and 1208-CR-153 (the Reservoir and Codman Square incidents), the judgments are reversed, the verdicts are set aside, and judgments shall enter for the defendant.  On complaint number 1208-CR-1050 (the Alewife incident), the verdicts shall stand; the sentences on those counts are vacated, and the case is remanded for resentencing.

So ordered.