APPEALS COURT 
 
 COMMONWEALTH vs. MICHAEL C. PARDEE

 
 Docket:
 24-P-140
 
 
 Dates:
 February 5, 2025 – May 1, 2025
 
 
 Present:
 Blake, C.J., Meade, & Englander, JJ.
 
 
 County:
 Worcester
 

 
 Keywords:
 Uttering Forged Instrument. Larceny. Evidence, Testimony of third party respecting identification, Relevancy and materiality, Intent. Intent. Negotiable Instruments, Forgery. Practice, Criminal, Motion in limine, Motion for a required finding.
 
 

  
      Complaint received and sworn to in the Worcester Division of the District Court Department on December 16, 2020.
      The case was tried before Jon L. Revelli, J.
      Peter J. Brewer for the defendant.
      Adam D. Mazonson, Assistant District Attorney, for the Commonwealth.
      BLAKE, C.J.  Following a jury trial in the District Court, the defendant, Michael C. Pardee, was convicted of eight counts of larceny over $1,200 (larceny), G. L. c. 266, § 30 (1), and eight counts of uttering a false check (uttering), G. L. c. 267, § 5.  On appeal, the defendant claims that the evidence was insufficient and certain evidence was admitted in error.  We affirm. 
      Facts.  In 2017, Donna Berg began living at Briarwood, an assisted living community in Worcester.  In December 2017, Donna[1] appointed her son, Peter Berg, as her durable power of attorney to manage her financial affairs.  Peter's responsibilities included paying Donna's bills, purchasing and writing checks, and authorizing transfers of money from her Citizens Bank account.  Donna's living expenses at Briarwood related to "anything inside the four walls of the apartment," such as utilities and cable, while any property maintenance was solely Briarwood's responsibility.  Peter paid Donna's bills using electronically generated checks.  
      In November 2018, Donna suffered a stroke, which exacerbated her existing dementia and prompted Peter to hire Caring Professionals to provide around the clock in-home nursing care.  Donna's health continued to deteriorate, and, on August 6, 2020, she was placed in hospice care at Knollwood Nursing Center, an end-of-life care facility associated with Briarwood.  During this time, she had "severe" dementia, no mobility, was unable to speak, and was being handfed.  She passed away on August 26, 2020. 
      Following her death, Peter discovered that one of the electronic checks used to pay Donna's bills had "bounced" due to insufficient funds in the account.  After reviewing Donna's bank statements, Peter learned that eight handwritten checks, totaling approximately $34,000, were drawn on the Citizens Bank account that he had not authorized but that were purportedly signed by Donna.  Each of the checks was made payable to and endorsed by the defendant and had been cashed at a check cashing facility in Worcester -- the Check Exchange -- in August 2020 after Donna had been admitted to hospice.  One check, dated August 26, 2020, was issued on the day Donna died, and another, dated August 28, 2020, was issued two days after she passed.  The checks' memo lines bore notations for a variety of services including, inter alia, "moving," "roof back house/paint room," "(new roof 50yr) completion project," "estate," and "nursing care."[2]  Peter had never met the defendant, never hired him for any services, and based on Peter's familiarity with his mother's handwriting and her declining health, determined that it was not Donna's signature on the checks.  
      Through cross-examination and argument, the defendant claimed that he was misidentified as the person who cashed the checks.  At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty, which the judge denied.  The jury convicted the defendant of all sixteen charges.  This appeal followed.  
      Discussion.  1.  Evidentiary issues.  The defendant argues that the judge erred in allowing (1) the owner of the Check Exchange to testify about its check cashing procedures, and (2) Peter and the owner of Caring Professionals to testify about the firing of Stephanie Pardee, a caregiver to Donna.  The defendant moved in limine to preclude the introduction of this evidence, which was denied.  He objected contemporaneously at trial when the evidence was admitted, thus we review each claim for prejudicial error.  See Commonwealth v. Teixeira, 490 Mass. 733, 742 (2022).  We bear in mind that "[w]hether evidence is relevant and whether its probative value is substantially outweighed by its prejudicial effect are matters entrusted to the trial judge's broad discretion and are not disturbed absent palpable error" (citation omitted).  Commonwealth v. Sylvia, 456 Mass. 182, 192 (2010).
      a.  Check cashing procedures.  At trial, Scott Manchester, the owner of the Check Exchange and keeper of its records, testified that it was the policy of the business to require customers to produce photographic identification (identification), a Social Security number, and a telephone number to cash a check.  He further testified that this information is saved digitally as a customer card along with a copy of the customer's identification (and Social Security number) and is compared against the check's payee and the person actually cashing the check.  Copies of the eight cashed checks at issue here and the defendant's identification, as kept on file at the Check Exchange, were admitted in evidence over the defendant's objection.  The defendant contends that this evidence was not relevant and was unduly prejudicial.  We disagree.  
      "Evidence is relevant if it has a rational tendency to prove an issue in the case, or render a desired inference more probable than it would be [otherwise]" (quotations and citations omitted).  Commonwealth v. Arroyo, 442 Mass. 135, 144 (2004).  "[R]elevant evidence is subject to exclusion if 'its probative value is substantially outweighed by a danger of,' among other things, 'unfair prejudice.'"  Commonwealth v. Correia, 492 Mass. 220, 228 (2023), quoting Mass. G. Evid. § 403 (2023).  Here, Manchester's testimony bore directly on the contested issue of identity.  That it was the routine procedure of the Check Exchange to require the name on the check and customer's physical appearance to match the identification on file made more probable the Commonwealth's contention that the defendant -- the only customer on file with the defendant's name and under whose name the checks were cashed -- was indeed the individual who cashed the checks.  As to the risk of unfair prejudice, the defendant "has not identified anything 'unduly prejudicial' about this evidence, only its tendency to inculpate him."  Arroyo, supra. 
      b.  Stephanie Pardee.  Peter testified that an unnamed caregiver from Caring Professionals had taken Donna to a branch of Citizens Bank to withdraw a "large amount" of cash and was subsequently terminated for doing so.  The owner of Caring Professionals, Judy LaVenture, later testified that she terminated an employee named Stephanie Pardee in February 2020 following an "incident" between an employee and the Berg family.[3]  The defendant argues that this evidence was irrelevant and highly prejudicial as it "compelled [him] to defend against the inference[] that [Stephanie] had stolen the checks and given them to [the defendant], who was actively coordinating with her."  Assuming, without deciding, that the testimony was not relevant, we conclude that the defendant was not prejudiced by its admission. 
      "An error is not prejudicial if it did not influence the jury, or had but very slight effect" (citation omitted).  Teixeira, 490 Mass. at 742.  In ruling on the defendant's objection, the judge allowed the testimony for the limited purpose of establishing that an issue existed between a Caring Professionals employee and the Berg family.  Indeed, neither Peter nor LaVenture directly testified that Stephanie Pardee was the caregiver who had taken Donna to the bank to withdraw money, and the effect of their combined testimony, which was brief and limited in detail, "had at most a 'very slight effect' on the jury" where the centerpiece of the Commonwealth's case was the evidence of the check cashing procedures discussed supra.  Commonwealth v. Andre, 484 Mass. 403, 416 (2020), quoting Commonwealth v. Barbosa, 463 Mass. 116, 124 (2012).  See Commonwealth v. Molina, 439 Mass. 206, 212 (2003) (considering strength of nontainted evidence compared to tainted evidence in assessing effect of error).  To the extent the defendant argues that this testimony invited the jury to speculate about the relationship between the defendant and the terminated caregiver, the judge instructed the jury not to "guess or speculate about things about which there is no evidence."  As "[t]he jury are presumed to follow the judge's instructions," this further mitigated any risk of unfair prejudice.  Commonwealth v. Andrade, 468 Mass. 543, 549 (2014).
      2.  Sufficiency of the evidence.  Concluding that the contested evidence was neither erroneously admitted nor unduly prejudicial, we turn next to the issue of sufficiency.  
"In determining whether the Commonwealth met its burden to establish each element of the offense charged, we apply the familiar Latimore standard. . . .  '[The] question is whether, after viewing the evidence in the light most favorable to the [Commonwealth], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"
Commonwealth v. Colas, 486 Mass. 831, 836 (2021), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).
      a.  Uttering.  To sustain a conviction of uttering, the Commonwealth is required to "prove that the defendant (1) offered as genuine; (2) an instrument; (3) known to be forged; (4) with the intent to defraud."  Commonwealth v. Oliver, 494 Mass. 697, 698 (2024), citing Commonwealth v. O'Connell, 438 Mass. 658, 664 n.9 (2003) (discussing elements of G. L. c. 267, § 5).[4]
      At trial, the defendant conceded that the checks were not authorized by Peter or Donna.  The theory of his defense at trial was misidentification.  However, for the first time on appeal, he contests the sufficiency of the evidence as to both his knowledge and intent to defraud.  Accordingly, "we address the question of sufficiency of the evidence [as to these elements] for purposes of assessing whether there has been a substantial risk of a miscarriage of justice."  Commonwealth v. Galarza, 93 Mass. App. Ct. 740, 747 (2018).  See Commonwealth v. Powell, 459 Mass. 572, 579 (2011), cert. denied, 565 U.S. 1262 (2012), abrogated on other grounds as recognized by Commonwealth v. Crowder, 495 Mass. 552, 557 (2025) ("findings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice" [citation omitted]).
      In two recent decisions, the Supreme Judicial Court clarified the parameters of sufficiency as to both knowledge and fraudulent intent.  See generally Oliver, 494 Mass. at 697; Commonwealth v. Scordino, 494 Mass. 1031 (2024).  In Oliver, the Commonwealth's evidence that the defendant cashed a single recently stolen check from an account holder who did not know the defendant or have reason to pay her, combined with a "negligible" misspelling in the account holder's signature,[5] was, in its totality, insufficient to prove that the defendant knew the check she cashed was forged.  See Oliver, supra at 699, 702.  Similarly, in Scordino, the court held that "the fact that the defendant cashed a check from an account holder unknown to her is insufficient to prove that she had knowledge of the forgery or that she intended to defraud."  Scordino, supra at 1032.  These cases hold that the mere act of cashing a check from an unknown account holder, who had no reason to pay the defendant, is insufficient to support a conviction of uttering.
      Here, in contrast, the Commonwealth's evidence went further.  In addition to the fact that neither Peter nor Donna knew nor had reason to pay the defendant, the Commonwealth presented the following evidence:  the checks' memo lines stated as the purposes for the payments services the defendant had not provided; the checks were issued across dates during which Donna was physically unable to write checks; the checks were cashed within a two-week period at a check cashing facility where the signature of the payor was not verified; and the checks were cashed for a large sum of money.
      That the checks' memo lines bore notations for services the defendant did not render is particularly significant.  As noted, Caring Professionals was Donna's only provider of nursing care; expenses related to property maintenance, such as roofing and painting, were inclusive of Donna's rent and the sole responsibility of the facility in which she was living; and the defendant had never been hired for any of the services specified on the memo lines of the checks.  Viewing the evidence in the light most favorable to the Commonwealth, the jury could reasonably infer the defendant's knowledge of the forgery from the evidence that he endorsed eight checks made out for services he knew he had not performed.  Compare State v. Baca, 123 N.M. 124, 128 (1997) (false notation on check drawn on construction company account for work not performed by defendant permitted jury to infer guilty knowledge).  Contrast Oliver, 494 Mass. at 699, 701 n.8 (single personal check cashed without purpose noted in memo line).  
       The Commonwealth also points to the defendant's conduct as circumstantial evidence of his intent to defraud:  he cashed the checks rather than depositing them into a bank account; he chose to do so at a check cashing facility rather than at a bank where Donna's signature could be verified; he did so eight times within a two-week period; and each check was for several thousand dollars, totaling approximately $34,000.  While any of these actions might be innocuous when viewed alone, we agree that considered in totality with the other evidence discussed above, the jury could reasonably infer the defendant's intent to defraud from his conduct, including the fact that the checks were cashed.  See Commonwealth v. Analetto, 326 Mass. 115, 119 (1950) ("One forging an indorsement on a check is presumed to intend the probable consequences of his acts," including "that whoever pays out money under the belief that the indorsement is genuine is likely to be defrauded").  See also O'Connell, 438 Mass. at 664 (five forged checks cashed at two different banks sufficed as circumstantial evidence of intent to defraud); Commonwealth v. Crocker, 384 Mass. 353, 354 (1981) (three checks cashed at three different branches of same bank sufficed as circumstantial evidence of uttering); Commonwealth v. Murphy, 70 Mass. App. Ct. 774, 777-778 (2007) (evidence sufficed as to uttering counterfeit note where defendant's conduct permitted inference he "was attempting to exchange quickly the counterfeit bills for genuine ones").  Accordingly, the evidence was sufficient to prove the convictions of uttering beyond a reasonable doubt.
      b.  Larceny.  To convict the defendant of larceny, "the Commonwealth is required to prove the 'unlawful taking and carrying away of the personal property of another with the specific intent to deprive the person of the property permanently.'"  Commonwealth v. Mills, 436 Mass. 387, 394 (2002), quoting Commonwealth v. Donovan, 395 Mass. 20, 25-26 (1985).  The defendant contends that the Commonwealth failed to present sufficient evidence that he possessed the checks or that it was he who took and carried them away.  This argument is unavailing.  
      We note, as a preliminary matter, that the defendant was not charged with larceny of the checks, but of the money he obtained when he cashed them.  The Commonwealth presented evidence that the Check Exchange had only one customer by the defendant's name on file, that the checks were made payable to and endorsed by the defendant, and that it was the policy and implemented procedure of the Check Exchange to compare the name and photograph on the customer's identification with the check's payee and the appearance of the person presenting the check to be cashed.  The jury also had the opportunity to compare the defendant's court room appearance with the copy of his identification as kept on file at the Check Exchange.  This evidence, "when taken together, 'formed a "mosaic" of evidence such that jury could conclude, beyond a reasonable doubt, that the defendant was'" the person who took and carried away the approximately $34,000.[6]  Commonwealth v. Quinones, 95 Mass. App. Ct. 156, 162 (2019), quoting Commonwealth v. Jones, 477 Mass. 307, 317 (2017).  See Commonwealth v. Blackmer, 77 Mass. App. Ct. 474, 483 (2010) ("Proof of the identity of the person who committed the offense may be established in a number of ways and [i]t is not necessary that any one witness should distinctly swear that the defendant was the man" [quotation and citation omitted]).  Based on the totality of the evidence, viewed in the light most favorable to the Commonwealth, the evidence sufficed.
 
Judgments affirmed.
footnotes
          
      [1] As certain parties share a surname, we refer to them by their first names to avoid confusion.  
          [2] The eight checks were as follows:  check no. 223, dated August 21, 2020, and payable to Mike Pardee in the amount of $6,400, for "moving"; check no. 224, dated August 14, 2020, and payable to Mike Pardee in the amount of $2,350, for "roof back house/paint room"; check no. 225, dated August 19, 2020, and payable to Mike Pardee in the amount of $4,250, for "estate"; check no. 226, dated August 17, 2020, and payable to Mike Pardee in the amount of $2,800, for "complete final payment"; check no. 227, dated August 15, 2020, and payable to Mike Pardee in the amount of $2,600, for "(new roof 50yr) completion project"; check no. 232, dated August 26, 2020, and payable to Mike Pardee in the amount of $4,800, for "home"; check no. 234, dated August 24, 2020, and payable to Mike Pardee in the amount of $3,400, for "nursing"; and check no. 238, dated August 28, 2020, and payable to Mike Pardee in the amount of $7,400, for "nursing care."
          [3] At trial, Stephanie Pardee was also referred to as "Stephanie Purdue" and "Stephanie Predue."
          [4] G. L. c. 267, § 5, provides as follows:
     "Whoever, with intent to injure or defraud, utters and publishes as true a false, forged or altered record, deed, instrument or other writing mentioned in the four preceding sections, knowing the same to be false, forged or altered, shall be punished by imprisonment in the state prison for not more than ten years or in jail for not more than two years."
          [5] The account holder's first name on the signature line was spelled "Eilleen," with an extra "l"; the court noted that "[t]he additional 'l,' written in cursive, [was] not particularly obvious" and thus had little significance.  Oliver, 494 Mass. at 701-702.
          [6] The defendant additionally posits that, even assuming he had cashed the checks, "[he] could have held an honest and reasonable belief he had a right to possess and cash the checks."  While it is true that "[h]onest but mistaken belief is an affirmative defense to larceny," Commonwealth v. Ryan, 93 Mass. App. Ct. 486, 492 (2018), the defendant did not advance this defense at trial and thus failed to preserve it.  See id., citing Mass. R. Crim. P. 14 (b) (3), as appearing in 442 Mass. 1518 (2004).  Even assuming, arguendo, that the defendant adequately raised the defense, viewing the evidence in the light most favorable to the Commonwealth, the evidence at trial established that the defendant did not have the right to cash the checks.